———o———

IN RE PETITION OF JOHN D. HAWKINS FOR REINSTATEMENT AS A MEMBER OF THE BAR OF KENT COUNTY.

1. ATTORNEY AND CLIENT— DISBARMENT—REINSTATEMENT.

Where an application for reinstatement as a member of the bar by an attorney disbarred for embezzling his client's money was accompanied by a resolution of the bar association of the county where the applicant had lived since his disbarment that it would raise no objection to the reinstatement, but was not accompanied by any definite recommendation by the bar, through its association and county examining committee, or by any citation of authorities showing whether the courts of other states had ever reinstated a member of the bar disbarred because of the commission of an offense of so high a grade, no final action would be taken until the court was furnished more facts and information upon which to base an intelligent, impartial and satisfactory conclusion.

2. ATTORNEY AND CLIENT—DISBARMENT—REINSTATEMENT.

Where an application for reinstatement as a member of the bar by an attorney disbarred for embezzling his client's money was accompanied by the unanimous recommendation of the bar association, made after a thorough

Statement.

and searching investigation of the applicant's record since his disbarment, no objection was made to the granting of the application, although by the court's direction the greatest publicity had been given it, and the court was satisfied that the applicant had been severely and adequately punished, had sincerely repented of his crime, and had lived such a life for a considerable period of years since his disbarment as to satisfy lawyers and laymen alike that he was an honest and upright citizen, of clean habits and good character, and likely to be in the future a useful and honest member of the bar and society, the application would be granted.

3.  Attorney and Client—Disbarment—Reinstatement.

On an application for reinstatement, as a member of the bar by a disbarred attorney, the unanimous recommendation of the bar association of the county where the applicant had lived since his disbarment would be accepted as a fair reflex of public sentiment, without calling prominent and representative citizens as witnesses in the applicant's behalf.

4.  Attorney and Client—Disbarment—Reinstatement.

On an application for reinstatement as a member of the bar by an attorney disbarred for embezzling his client's money, restitution of the money embezzled will not as a rule be given very much weight, as it might depend more upon the attorney's financial ability or other favoring circumstances than upon repentance or reformation.

(*May* 16, 1913.)

Pennewill, C. J., and Woolley and Rice, J. J., sitting.
*Hughes* and *Wolcott* for petitioner.
Superior Court for Kent County.

Petition, February Term, 1913, by John D. Hawkins for reinstatement as a member of the bar of Kent County. Petitioner reinstated.

John D. Hawkins was indicted for embezzlement as bailee, at the April Term, A. D. 1900, of the Court of General Sessions for Kent County. At the next succeeding October term he appeared and pleaded guilty and was sentenced. A petition was preferred against him by the Bar Association of Kent County, at the said April term of the Superior Court, praying for his disbarment, whereupon, on April twenty-sixth, upon his application, made in open court, it was ordered by said Superior Court that his name be forthwith stricken from the roll of attorneys of said court.

At the February term, A. D. 1913, of the Superior Court for Kent County, Mr. Hawkins preferred a petition to said court,

praying that he be reinstated as an attorney of said court and that his name be restored to the roll of attorneys for Kent County. Annexed to his petition was the following, duly signed:

"We, the undersigned, the children and heirs of Charles C. Babbitt, late of Philadelphia, deceased, desire that the public should know that John D. Hawkins, of the Town of Dover, Delaware, has adjusted the matters pertaining to said estate for which he was legally prosecuted after the death of our father, and we wish hereby to recommend Mr. Hawkins to the good will and good opinion of his fellow citizens. We deeply regret the whole affair."

There was filed with the said petition for reinstatement a certified copy, by the secretary of the Bar Association of Kent County, of the following motion and resolution:

"On motion of Mr. Wolcott, the association unanimously adopted the following resolution:

" 'Whereas, the attention of the Bar Association of Kent County has been called to the application of John D. Hawkins for reinstatement as a member of the bar of said county:

" 'Now, therefore, be it resolved, that the Bar Association will raise no objection to the reinstatement of John D. Hawkins when such application is considered by the court.' "

After maturely and deliberately considering the application for reinstatement, the court, by PENNEWILL, C. J., delivered at said term the following opinion:

[1] After a careful consideration of this application we have concluded that the court should not make any final order in the case until some definite recommendation is made by the bar through its association and examining committee respecting the merits of the application. We do not think the resolution adopted by the Bar Association and filed in this case can be regarded as a recommendation in any sense, neither does it furnish the court any information or assistance in the discharge of a duty which is not only very delicate and embarrassing but exceedingly important. The resolution referred to is in the following words:

"Now, therefore, be it resolved, that the Bar Association will raise no objection to the reinstatement of John D. Hawkins when such application is considered by the court."

The obvious meaning of the resolution is that, if the court shall assume the responsibility of reinstating the applicant, the bar of this county will not criticise its action. Such is its only effect when fairly interpreted, and it is needless to say that neither the court nor the applicant's case is in any way aided thereby.

Our recollection and information is that the name of Mr. Hawkins was stricken from the roll of the attorneys of this court at the April term, A. D. 1900, upon his own application, after a motion had been made on behalf of the Kent County Bar Association for the issuance of a rule on him to show cause why he should not be disbarred. This motion was made in pursuance of the action taken by the association on the report of its board of censors, after Mr. Hawkins had pleaded guilty to an indictment charging a serious offense and after sentence had been imposed therefor. Immediately after such motion was made, and upon the application of Mr. Hawkins in open court, his name was stricken from the roll of attorneys by order of the court.

In view of these facts we think that before the order then made is revoked, or the applicant is reinstated as a member of this bar, the court should not only have the information that will justify the action asked for, but also a clear expression from the bar showing its attitude and feeling with respect to the granting of the application.

Mr. Hawkins' retirement from the bar was caused by the proceedings taken by the association after considering the report made by the board of censors. He has lived in Dover since that time, and surely the attorneys practicing here should know better than the court whether his character, conduct, record and standing in the community have been such as to justify his readmission. And, moreover, we would like to be advised by counsel whether the courts of any state have ever reinstated a member of the bar who had been disbarred, or whose name had been stricken from the roll of attorneys, after the commission of an offense of as high a grade as that for which the applicant was convicted and punished. We are not certain, and therefore wish to be advised, whether any authority can be shown from adjudged cases that will warrant such action on the part of the court.

We are confronted in this case with one of those embarrassing duties which a court must sometimes meet, and it is needless to state what we would do if we should be governed entirely by our personal feelings and sympathies for the applicant and his family. It is just as needless to say that we must not be unduly influenced by our personal feelings in the discharge of an important public duty.

While we have no disposition to evade the performance of our duty in the present case, we feel that there is, in this matter, a duty resting upon the bar as well as upon the court; and we also realize that the people have an interest in the proceeding equal to that of either the bar or the court.

The proceeding before the court is entirely *ex parte*. The applicant is represented by counsel; but no one formally and openly opposes the application, because no one wishes to place himself in such a position. We can easily understand why such should be the case, but it does not make the duty of the court any easier to perform. It is not at all like a case where both sides are represented by counsel.

For the reasons given we have concluded to continue the case to the April term, with the hope that counsel for the applicant will at that time give the court all the authority, information and assistance, legal and otherwise, that can be furnished to support the application. And it will be very gratifying if we are also furnished with a recommendation or report showing the opinion of the law examining committee and of the bar of the county touching the reinstatement of the applicant as a practicing attorney. We are not prepared to make an intelligent or satisfactory decision now, because we have not before us the facts and information upon which to base an intelligent, impartial and satisfactory conclusion. And, besides, we know that no applicant is ever admitted to practice in this state without a report from the law examining committee of the county certifying, not only that the applicant is legally qualified, but that he is a person of integrity and good character, and recommending his admission.

The application before us is, in a sense, the same in principle and effect as the application of any other person for admission to

the bar, and barring the qualification as to his study and knowledge of the law, the finding and recommendation of the committee should in our opinion be the same in this case as in any other.

The case is continued.

At the April term A. D. 1913, the petitioner obtained leave of court, composed of Pennewill, C. J., and Boyce and Conrad, J. J., to file an amended petition with his affidavit annexed "that the facts and things set forth in the foregoing petition are true and correct," in which he averred:

"That for many years he was a member of the bar of the State of Delaware; that at the April term, A. D. 1900, he made application to the Superior Court, in and for Kent County, to have his name stricken from the roll of attorneys of said court, as appears from the order of said court of record in the prothonotary's office, in and for Kent County, in *Continuance Docket* 17, *page* 308; that at the said term of court your petitioner was indicted and convicted of embezzlement of certain moneys belonging to the estate of Charles C. Babbitt, a client and friend of long standing; that their relations and the circumstances under which the money was so paid in this petitioner's hands were such that he felt at liberty at the time to divert the money into other channels temporarily, though he now realizes his wrong in doing so; that said Charles C. Babbitt died in the meantime, after an illness accompanied by paralysis, and what could and would have been amicably adjusted with him appeared in a different light to his executor and heirs. Though this petitioner realized that technically, at least, it would not relieve him of the wrongdoing, he prepared for and proposed to the Attorney General to make restitution; that the sum of five hundred dollars, being the remainder of the money belonging to the said Charles C. Babbitt and in his hands at the time of the death of the said Charles C. Babbitt, was by your petitioner voluntarily paid over to the executor of the said Charles C. Babbitt; that your petitioner has always intended to pay to the heirs of the said Charles C. Babbitt all that was honestly due them; that all matters relating to the misappropriation of

the said moneys have been adjusted with the executor and heirs of the said Charles C. Babbitt to their satisfaction as will appear from the signed paper hereto attached; that your petitioner is deeply repentant of his act and promises to prove this in every way by his future acts and conduct; that since the striking of his name from the roll, now thirteen years ago, he has constantly resided in Dover, Del., where he lived at the time of his conviction, and he has at all times tried to live an upright and honest life, and he believes he has been able to re-establish himself in the confidence and respect of his fellow men; that, if reinstated as a member of the bar, he will at all times and under all circumstances endeavor to conduct himself in a way that will not bring discredit on the profession, or reflect on the judgment of the court; but that he will prove to the court, the bar and the community that he is worthy and upright and realizes to the fullest his error and the duties of an attorney."

There was filed with said petition the certificate of the secretary of the Bar Association of Kent County that said association unanimously adopted at a meeting of said association held on April 30, 1913, the following resolution:

"WHEREAS, on the twenty-sixth day of April, A. D. 1900, upon the application of John D. Hawkins, a member of the bar of this state, made in open court, it was ordered by the court that his name be stricken from the roll of attorneys; and

"WHEREAS, the said John D. Hawkins has filed a petition in the Superior Court of the State of Delaware, in and for Kent County, praying an order of said court for the restoration of his name to the roll of attorneys of said court, and reinstating him as such attorney; and

"WHEREAS, the said court at the February term, thereof, A. D. 1913, in an opinion, then delivered, stated that, before said John D. Hawkins is reinstated as a member of the bar, the court should have a clear expression from the bar showing its attitude and feeling with respect to the granting of the application; and

"WHEREAS, at a meeting of this Bar Association, held on the twenty-fifth day of April, A. D. 1913, a committee of seven members of the bar was appointed to investigate the character

Brief.

of the said John D. Hawkins and his fitness for reinstatement as a member of the bar of the state; and

"WHEREAS, the said committee has made report to this meeting of its findings in the matters referred to it, stating that, after such examination and investigation as it has been able to make concerning the conduct of the said John D. Hawkins since his name was stricken from the roll of attorneys, it finds no charges of criminal acts or misconduct, on the part of the said John D. Hawkins, other than as set forth and reported in said report; and

"WHEREAS, it appears that the said John D. Hawkins has adjusted or attempted to adjust all matters referred to in said report, and that he has, since the striking of his name from the roll of attorneys as aforesaid, conducted himself in such a manner as to lead the association to believe that he does in fact intend to lead such a life as is expected of a member of the bar:

"*Now, therefore, be it resolved* that the Bar Association of Kent County hereby recommends to the Superior Court of the State of Delaware, in and for Kent County, that the petition of said John D. Hawkins for reinstatement as a member of the bar be granted and that he be reinstated by the said court as a member of the bar."

There was further filed the certificate of the secretary of said association, giving the names of all the members of the bar who were present at said meeting, being all the members except four, three of whom wrote letters, which were likewise filed, and the fourth, George M. Jones, Esq., spoke to the court, recommending the reinstatement of Mr. Hawkins, also giving the names of the said special committee of seven, certifying as well that the report of said committee was signed by all the members thereof.

### BRIEF OF COUNSEL FOR PETITIONER.

An order or judgment of disbarment is not necessarily final or conclusive for all time, but an attorney who has been disbarred may be reinstated, on motion or application, for reasons satisfactory to the court. 4 *Cyc.* 917.

When an attorney is disbarred for the misappropriation of moneys intrusted to his keeping, and it subsequently appears that

the money has been fully refunded and repaid to those entitled thereto, and that his conduct since disbarment has been above reproach, and a strong showing is made by prominent attorneys of high professional standing that his reinstatement will in no way bring discredit upon the profession of the law, an application for his reinstatement will be granted. *In re Treadwell*, 114 *Cal.* 24, 45 *Pac.* 993; *Matter of Browne*, 2 *Colo.* 553.

When a member of the bar of the state has been, upon proper proceedings, disbarred and the judgment remains in full force and unreversed, the only remedy of the party is, at the proper time and on a proper showing to apply to the court in which he was disbarred, to be reinstated, the court rendering the judgment of disbarment, retaining jurisdiction over the subject as in many similar cases, and may upon a proper showing of reformation of the party or other satisfactory reasons arising after the disbarment, reinstate him in the practice of his profession. *Matter of King*, 54 *Ohio St.* 415, 43 *N. E.* 686; *Matter of Thatcher*, 83 *Ohio St.* 246, 93 *N. E.* 895, *Ann. Cas.* 1912A, 810; *Matter of Palmer*, 9 *Ohio Cir. Ct.* 179; *In re Boone* (*C. C.*) 90 *Fed.* 793; *In re Simpson*, 11 *N. D.* 526, 93 *N. W.* 918; *In re Newton*, 27 *Mont.* 182, 70 *Pac.* 510, 982; *In re Pyke*, 118 *E. C. L.* 703. Other cases cited: *In re Weed*, 28 *Mont.* 264, 72 *Pac.* 653; and *Id.*, 30 *Mont.* 456, 77 *Pac.* 50; *In re Burris*, 147 *Cal.* 370, 81 *Pac.* 1077; *People v. Essington*, 32 *Colo.* 168, 75 *Pac*, 394; *In re Washington*, 87 *Kan.* 794, 125 *Pac.* 1008; *Matter of Sullivan*, 185 *Mass.* 426, 70 *N. E.* 441; *Matter of Clark*, 128 *App. Div.* 348, 112 *N. Y. Supp.* 777; *Matter of Oppenheim*, 146 *App. Div.* 775, 131 *N. Y. Supp.* 423; *Matter of Sayer*, 146 *App. Div.* 928, 131 *N. Y. Supp.* 381; *Matter of Greenberg*, 146 *App. Div.* 945, 131 *N. Y. Supp.* 531; Cases contra: *In re Davies*, 93 *Pa.* 116, 39 *Am. Rep.* 729; *Kennedy's Disbarment*, 178 *Pa.* 232, 35 *Atl.* 995.

The application coming on to be heard on the third day of May, 1913, the court held it under advisement until May 16th, and directed that representatives of the press be given access to all the papers filed for public information.

On May 16th, the court, composed of PENNEWILL, C. J.,

and BOYCE and CONRAD, J. J., having inspected and examined the record and proceedings, and carefully considered the same, announced the following opinion:

PENNEWILL, C. J., delivering the opinion of the court:

[2]  This application has received from the court special consideration because of its interest and importance to the bar of the entire state as well as to the public and the applicant himself.  It is the first application of the kind that has been formally made in this state, and because of that fact also the case is entitled to more than ordinary attention.

We have endeavored to reach a conclusion that will be just to the applicant, and unjust neither to the bar nor the public.  It would seem reasonable to believe that a decision favorable to this applicant would form a precedent that might be embarrassing in the future.  It might not be unreasonable for any one to think that, if Mr. Hawkins is reinstated as a member of the bar, other persons who have been disbarred for offenses not more serious would be also entitled to reinstatement.  Assuming that such a thought would probably occur to many persons the court took the precaution to say at the last term that no final action would be taken in the matter unless the bar of the county positively and clearly recommended his reinstatement.  Such recommendation has been made, and it not only represents the unanimous feeling of the bar, but it appears to be the result of a very thorough and searching investigation of Mr. Hawkins' record since his name was stricken from the roll of attorneys by order of the court thirteen years ago.

There have been cases somewhat analogous to the present one before the courts in other jurisdictions, and the decisions have not been uniform.  In some cases the applicant has been reinstated when the court were satisfied that restitution had been made, that the offense had been atoned for, and that the life of the applicant since his disbarment had been clean and honorable.

Other courts, but comparatively few, have refused to reinstate an attorney who had been disbarred for an offense as serious as that committed by Mr. Hawkins, no matter whether he had

made restitution or not, and no matter if his subsequent conduct had been blameless in every respect.

It is quite certain that no more unpleasant and embarrassing duty could be imposed upon a court than the decision of such a question as we have now to determine. Shall we say that an attorney who has been guilty of grossly unprofessional conduct, who has embezzled his client's money shall be disbarred forever, as a just punishment for his crime and as a necessary protection to the profession and the public; or shall we say that he may, by leading an upright and honest life for a long period of years after his fall, retrieve the past and be restored to his former state and position in his profession? Courts which have held the disbarment to be final and permanent have undoubtedly been controlled by the thought that the integrity of the bar and the character of the profession are of more importance than the feelings or interests of a single unfortunate member. No one will question the soundness of this proposition, nor would any one deny that there has never been a time when greater pains should be taken and greater efforts made by the courts to retain and deserve the confidence and respect of the people.

But the case now before the court differs from any other we have seen in this, that the reinstatement of the applicant is urged and strongly recommended by the entire bar of the county, and, so far as we are advised, there is no dissent whatever from the citizenship of the county.

[3] The court must repose a great deal of confidence in the bar, and when its members are united upon any proposed action that directly affects the profession, it must be very effective, and we accept their recommendation as sincere, and inspired by good and proper motives. And, moreover, we will assume, in the absence of any evidence to the contrary, that their unanimous feeling in regard to Mr. Hawkins is a fair reflex of public sentiment. For that reason we said it was unnecessary to call prominent and representative citizens as witnesses in the applicant's behalf, which he stood ready and willing to do.

The application now before us has been given the greatest publicity by the direction of the court, in order that laymen as

well as lawyers might know of its presentation and purpose, and have ample opportunity to express their opinions upon the subject. But no objection has been made so far as we know; on the contrary every comment we have seen has been most favorable to the applicant.

We are constrained, therefore, to believe that but one reason can be assigned for refusing the motion, and that is the one upon which a few courts have acted, viz.: That disbarment for the commission of a crime must be permanent, and the person so disbarred forever precluded from resuming the practice of his profession. No matter what his subsequent conduct may be; no matter how hard and successfully he has tried to live down the past and atone for his offense; no matter how full his repentance and complete his reformation; his restoration to the bar is absolutely impossible—the door is forever closed.

We are of the opinion that this is a hard and unreasonable rule, and too severe to be entirely inflexible. If such is the law, then it may be well said that it is more inexorable than justice would seem to require; and in some cases, at least, the effect would be to do harm rather than good—to injure rather than help.

But we do not want to be misunderstood. We do not think it should be easy for an attorney who has committed a crime to retain or regain his membership in the profession. On the contrary, the conditions imposed should be difficult and exacting. They have been of such character in this case, and they have been fully, and perhaps surprisingly, met.

[4] We do not attach very much importance, as a rule, to the matter of restitution, because that may depend more upon financial ability or other favoring circumstances than repentance or reformation. A thoroughly bad man may make restitution, if he is able, in order to rehabilitate himself and regain his position in the community; and a thoroughly good man may be unable to make any restitution at all. Repayment of the money wrongfully withheld is eminently proper, and especially so if done from a good motive, but it does not absolve the crime, or, in itself, prove that the offender is inherently a better man.

The facts that impress us as of most importance in such cases are these: That the wrongdoer has been severely and adequately punished; that he has sincerely repented of his crime; that he has lived such a life for a considerable period of years since his disbarment that lawyers and laymen alike are satisfied he is an honest and upright citizen, of clean habits and good character, and likely to be in the future, if given a chance, a useful and honest member of the bar and society.

From the evidence and information before the court (upon which alone our decision must be based), we are constrained to believe these facts have been fully established. The court have carefully read and considered the report and recommendation of the Kent County Bar Association. It appears from their resolutions filed in the case that the association have carefully and thoroughly investigated the life of Mr. Hawkins since his disbarment and found it satisfactory. Indeed, the members of the association were so well satisfied with the result of their investigation that they unanimously and earnestly recommended the applicant's reinstatement. We have no other evidence or information upon which to act, and basing our opinion upon the report and recommendation of the bar, and assuming that they have fairly and conscientiously endeavored to assist the court in the performance of this delicate and embarrassing duty, we have concluded that Mr. Hawkins should be reinstated upon the roll of attorneys from which his name was stricken thirteen years ago upon his own motion following his conviction and sentence, and following also the petition of the bar association asking for his disbarment.

In saying this we wish to express the hope that the court and bar may not be deceived respecting Mr. Hawkins' true character, and that none of us may ever have reason to regret the action now taken.

It is a very common practice in our criminal court to give the wrongdoer another chance to make good in life. Such a practice is sanctioned by good people everywhere today, and is certainly within the spirit and policy of the law. In giving Mr. Hawkins another chance to be a lawyer and a man, we cannot too strongly impress upon him the fact that he will be for some time

Opinion.

at least, in a sense, on trial; his course and conduct will be closely watched and any deviation on his part from the straight line of professional integrity and propriety may result in a revocation of the order made in his favor today.  If it shall appear in the future, at any time, that the court were mistaken in their opinion of his present character, and wrong in their judgment respecting his fitness to practice law, they will not hesitate to annul the order they now conscientiously make.

In concluding these remarks we desire to say a few words about the effect of our decision in this case, because we confess it is a feature which has given us much concern.  We have before observed, that as a protection and safeguard in future cases, we imposed in this case certain conditions which it will be impossible to meet except in a meritorious case.  The court is not likely to be embarrassed hereafter in any application for reinstatement if it is understood that an attorney who has been disbarred will not be reinstated unless his application is supported by proofs, resolutions and recommendations as strong, full and convincing as those presented in the present case; nor unless a considerable period of time has elapsed since his disbarment.  The decision in every case must depend, of course, upon its own facts and circumstances, and the present decision cannot be regarded as a precedent which shall govern any other case unless the facts and circumstances are substantially similar.

It is ordered that the applicant, John D. Hawkins, be reinstated as a member of the bar, and that his name be restored to the roll of attorneys of this court.

It is also ordered that all the papers filed in the case, including this opinion, be recorded in the continuance docket, as of the present term of this court, and properly indexed.

Whereupon the court made the following formal order:

And now, to wit, this sixteenth day of May, A. D. 1913, the foregoing petition and all the papers filed in the case having been considered, it is ordered by the court that the applicant, John D. Hawkins, be reinstated as a member of the bar and that his name be restored to the roll of attorneys of this court.