**In the Matter of Sidney J. CLARK.**

Supreme Court of Delaware.

Submitted May 25, 1979.

Decided July 6, 1979.

Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for petitioner.

Joseph H. Flanzer, of Flanzer & Isaacs, Wilmington, for Censor Committee.

Before McNEILLY, QUILLEN and HORSEY, Justices.

McNEILLY, Justice:

Sidney J. Clark petitions for reinstatement as a member of the Bar of this Court, on the conditions that he shall not open an office for the practice of law, nor hold himself out to the public as engaged in the practice of law, nor charge or accept fees for legal services, with the exceptions that he may work as a salaried staff attorney for not more than two corporate or governmental employers. Petitioner presently is employed by E. I. duPont de Nemours & Co. and seeks this conditional readmission hoping to transfer to the legal department of that company. General Counsel for the company has agreed to open the door for petitioner to interview departmental heads within the legal department if petitioner is granted conditional readmission. But the record is clear that no promise of a transfer has or will be made.

The petitioner was admitted to the Bar of this Court in January, 1957. In February, 1969, petitioner was disbarred because of his commingling and diversion to his own personal use of clients' funds in the approximate amount of $100,000. The opinion of this Court ordering disbarment is reported as *In Re Clark,* Del.Supr., 250 A.2d 505 (1969). Reference to that opinion will disclose the basic circumstances.

Subsequent to his disbarment petitioner was indicted, tried, and convicted by a Superior Court jury of two charges of embezzlement arising out of the same series of events resulting in his disbarment. On January 4, 1973 petitioner was sentenced to two concurrent five year terms of imprisonment, and was committed to the Delaware Correctional Center. After a period of incarceration at the Correctional Center he was transferred to the Plummer House, a work release center, and was thereafter permitted to engage employment with a trucking firm having offices in New Castle County.

Petitioner commenced habeas corpus proceedings which resulted in the reversal of his convictions on technical grounds by the United States Court of Appeals for the Third Circuit. *United States ex rel. Clark v. Anderson,* 3d Cir., 502 F.2d 1080 (1974). Because of the reversal of his convictions, petitioner was released in July, 1974, after approximately eighteen months in custody.

Preliminarily, after the filing of Mr. Clark's petition for conditional readmission to the Bar, this Court felt impelled to appoint a Master, because:

"[I]n order to give due consideration to the said petition, it is necessary that all pertinent facts and conclusions of law be fully developed in a proceeding participated in by the petitioner on the one hand, and the Censor Committee of this Court, on the order;"

For that purpose William Poole, Esquire, was appointed Master with all the powers and authority of a Master under the Rules of the Court of Chancery.[1]

An evidentiary hearing was held before the Master on September 18, 1978 and re-

---

1. We take this opportunity to express our appreciation to the Master, William Poole, Esquire, for a difficult task undertaken forthrightly, judiciously and impartially, giving full opportunity for all interests to be heard.

Exceptions to the Master's report were taken by the petitioner, and, in turn, the Master filed his answers to those exceptions. The matter was then briefed and argued before this Court.

cessed to a later date to give the Censor Committee an opportunity to take a position on the petition for conditional readmission, and to give Mr. Clark, the petitioner, and members of the general public a further opportunity to present additional evidence. The hearing was resumed and concluded on January 4, 1979 following written notice to the news media and to all individuals who had expressed an interest in the proceedings. In the interim the Censor Committee had filed a report which reads in part:

"Due to the absence of any record before the Committee in connection with the Petition, the Committee does not believe it is appropriate for it to express an opinion upon the Petition for conditional readmission. There is one aspect of the proceeding, however, upon which I am authorized to communicate to you and to counsel.

"It is our understanding that at no time prior to the initiation of the above action, was there any offer made by the Petitioner to reduce his obligations to his former clients or to the trustees of the Clients' Security Trust Fund. While it further appears from the record that Mr. Clark's financial resources had been very limited, the Committee is concerned with the absence of any steps being taken by him to recognize or reduce his obligations."

The Master thereafter filed his report including the transcript of testimony and all exhibits with this Court recommending, "that the petition of Clark for conditional readmission be denied at this time."

█ This petition has been given special consideration by the Court because of its importance and impact upon the petitioner, the entire Bar of the Court, and the public. In petitioning for reinstatement to the Bar by one who has been removed from the roll of attorneys of this Court for conduct showing his moral unfitness to continue in the practice of law, the burden upon the petitioner is a heavy one. There are two reported decisions in Delaware dealing with reinstatement of disbarred members of the

Bar. The first was *In Re Hawkins,* Del.Super., 87 A. 243 (1913). The second was *In Re Bennethum III,* Del.Supr., 278 A.2d 831 (1971). In *Hawkins* the Court had the unanimous endorsement of the Kent County Bar Association for reinstatement of the petitioner, membership and discipline of members then being on a county basis. In *Bennethum* the Court had the unanimous recommendation of the Censor Committee of this Court, constituting the disciplinary arm and a cross section of the Bar. In this case we have reservation by the Censor Committee, and opposition by individual members of the Bar, including one member of the Bar acting on behalf of clients who continue to suffer from the loss of their funds. On the other hand, we have recommendations from other members of the Bar and some lay persons for conditional reinstatement only. We have no recommendation in the record for full reinstatement.

Conditional reinstatement of a disbarred member of the Bar is novel. There is no precedent in Delaware for such relief, nor have we found any precedent for such relief in other jurisdictions. See 70 Annot., 70 A.L.R.2d 268 (1960).

█ It is the duty of this Court in all cases of petitions for reinstatement to act with justice to the profession, the applicant and the public as well, without regard to feelings of sympathy. Whether a petition for reinstatement shall be granted rests in the sound discretion of the Court and depends upon whether the Court, after considering all circumstances, decides that the public interest in the orderly and impartial administration of justice will be served by the applicant's readmission. Although precedent from this and other jurisdictions should be weighed as guidelines of discretion, each case must stand or fall on its own facts and circumstances.

Of great importance to this Court at this time is the trust and confidence of the public in the Bar of this Court. We have suffered as a result of the moral turpitude of those few who in recent years have breached their oaths of office as attorneys and officers of this Court, the criminal law

of this State and one, if not the foremost, principle of trust law, by commingling and diverting clients' funds to their own use.

In the case of *In re Barton,* Md.App., 273 Md. 377, 329 A.2d 102 (1974), the Maryland Court of Appeals has stated the test for reinstatement in the following terms:

"We have previously set forth the four principal factors which should be considered in evaluating a petition for reinstatement to the bar. They are: (1) the nature and circumstances of the original misconduct; (2) petitioner's subsequent conduct and reformation; (3) his present character; (4) his present qualifications and competence to practice law." 329 A.2d at 104.

In *State ex rel. Spillman v. Priest,* Nebr. Supr., 123 Neb. 241, 242 N.W. 433 (1932), the Court stated:

"The decisive question on such an application is whether the applicant is of good moral character, and is a fit and proper person to be entrusted with the privileges of the office of attorney. . . . The conversion of a client's money by an attorney involves moral turpitude and requires evidence of reformation before such attorney may be reinstated." 242 N.W. at 434.

In *Hawkins, supra,* the Court said:

"We do not think it should be easy for an attorney who has committed a crime to retain or regain his membership in the profession. On the contrary, the conditions imposed should be difficult and exacting."

\*    \*    \*    \*    \*    \*

"The facts that impress us as of most importance in such cases are these: That the wrongdoer has been severely and adequately punished; that he has sincerely repented of his crime; that he has lived such a life for a considerable period of years since his disbarment that lawyers and laymen alike are satisfied he is an honest and upright citizen, of clean habits and good character, and likely to be in the future, if given a chance, a useful and honest member of the bar and society." 87 A. at 247.

And in *Bennethum* the Court reinstated the disbarred petitioner on the basis stated in *Hawkins* and by a finding that ". . . by his sincere contrition and regret for his past action, that he is worthy of being reinstated to the Bar of this Court." 278 A.2d at 833. In concluding the *Bennethum* opinion the Court said at page 834:

"Mere passage of time and penitence are not alone sufficient grounds for reinstatement. Of prime importance, we think, is the fact that no innocent client has suffered by reason of the misconduct of Mr. Bennethum. That circumstance, we think, is an essential element in the consideration of an application for reinstatement."

That language emphasizes the suffering of innocent clients. Similarly, the Master's record in this case centers on restitution. In making his recommendation to this Court, the Master emphasized the petitioner's failure to make an effort toward restitution to those who suffered loss, as the central issue in the case. For those reasons we quote herein that part of the Master's report which discusses the general law of restitution as a requisite for reinstatement of disciplined lawyers in other jurisdictions.

"It appears that most courts regard restitution or a good faith attempt to make restitution as one indication, not determinative in and of itself, of repentance and good character. In at least one case reinstatement was allowed even though no restitution was made. Other cases denied reinstatement partially on grounds that no serious attempt at restitution was made despite the fact that petitioner's financial situation would have permitted at least partial settlement. In some cases reinstatement has been conditioned upon the making of full or partial restitution.

The California Supreme Court has been of the opinion that the failure to make restitution does not definitely establish lack of the repentance and reformation required for reinstatement. *Beeks v. State Bar,* Cal.Supr. [35 Cal.2d 268], 217

P.2d 409, 414–415 (1950) (per curiam) (reinstatement denied in part because no good faith, voluntary effort of restitution made where misuse of clients' funds on at least four occasions); *Wettlin v. State Bar*, Cal.Supr. [24 Cal.2d 862], 151 P.2d 255, 259–260 (1944) (per curiam) (petition for reinstatement denied). In one case, *In Re Andreani*, Cal.Supr. [14 Cal.2d 736], 97 P.2d 456, 463 (1939) (per curiam), reinstatement was ordered even though no restitution at all was made of misappropriated client funds.

The California Court has cited failure to make restitution as one ground for denial of petitions for reinstatement generally only where petitioner had sufficient funds to make restitution but failed to do so, suggesting a lack of rehabilitation on the part of petitioner. *McArthur v. State Bar*, Cal.Supr. [28 Cal.2d 779], 172 P.2d 55, 61 (1946) (per curiam) (petitioner devised to secure smallest possible satisfaction of client's judgment); *Kepler v. State Bar*, Cal.Supr. [216 Cal. 52], 13 P.2d 509, 511 (1932) (per curiam) (reinstatement denied where petitioner delayed and then failed to consummate an attempt to make restitution, despite his possession of ample funds). Many decisions outside California appear to be in accord. *See Committee on Professional Ethics v. Wright*, Ia.Supr. [Iowa], 178 N.W.2d 749, 752 (1970) (good faith effort at reimbursement of client as condition of reinstatement not unreasonable in case of suspension for unethical and unprofessional conduct where petitioner possessed or could raise funds to make at least partial restitution); *In Re Palmer*, Ohio Cir.Ct., 15 Ohio CC 94, 104 (1897) (reinstatement denied where petitioner had failed to offer what restitution was possible for him to make), *aff'd*, Ohio Supr., 58 N.E. 1100 (1900) (per curiam)."

Along the same lines, it was stated in a New Jersey case:

"[T]here should be no hard and fast rule upon the subject of restitution, but . . . each case should be considered and dealt with in the light of its own circumstances, bearing in mind that the aim of the court is to search the heart of the petitioner . . . as to his moral standards as shown in his conduct." *In Re Harris*, N.J.Supr., 95 A. 761, 762 (1915) (reinstatement granted even though only partial restitution made where petitioner made such restitution as possible in view of "his crippled capacity to earn money").

And in a recent New Jersey case the Supreme Court of that state required complete restitution as a condition for reinstatement. *Matter of Hickey*, 69 N.J. 69, 350 A.2d 483 (1976).

It has also been stated:

"The more reasonable and just rule, which is sustained by the weight of authority, is to effect that restitution in full need not necessarily precede reinstatement; that restitution means payment to the extent of one's ability to pay, honestly and fairly made." *Petition of Stalnaker*, Fla.Supr., 150 Fla. 853, 9 So.2d 100, 104 (1942).

In *Stalnaker* the Court reinstated to practice an attorney who had been suspended from practice for twelve months and until such time as he should discharge certain indebtedness to the guardian of a particular minor. A concurring judge stated that his agreement with the holding was based upon the fact that Stalnaker had been disciplined by the temporary measure of suspension, not disbarment, and, as the majority pointed out, a requirement of restitution in full might result in a permanent separation from practice. *Id.* at 104.

On the other hand, some cases have appeared to require at least some restitution in most if not all cases. In regard to cases involving misappropriation of clients' funds, it has been held that only in exceptional cases should reinstatement be allowed if restitution or an extremely diligent effort at restitution has not been made. *Petition of Dawson*, Fla.Supr., 131 So.2d 472, 474 (1961).[2] According to the *Dawson* Court

---

2. The *Dawson* Court stated that restitution in and of itself may not be sufficient to justify reinstatement.

(which ordered reinstatement in the case before it):

> "This should be the rule because restitution is symbolic of repentance, honesty and desire to do the right thing under the circumstances." *Id.*

*See also State ex rel. Oklahoma Bar Association v. Brock,* Okl.Supr., 490 P.2d 1094 (1971) (full and timely restitution of funds warranted reinstatement, where terms and conditions of suspension had been met); *In Re Chantry,* Wash.Supr., 84 Wash.2d 153, 524 P.2d 909 (1974) (en banc) (restitution to client led to reinstatement subject to passing examination, where restitution made soon after disbarment, where shown that former marital and drinking problems were obviated, and where recent exemplary work with state government agency shown).

It has also been held that restitution in full is a condition precedent to reinstatement following suspension for misappropriation of escrow funds. *Florida Bar v. Pritikin,* Fla.Supr., 259 So.2d 138 (1972) (per curiam). Another Florida decision, which imposed a six-month suspension, made restitution or arrangements satisfactory to the client a condition to reinstatement. In this case the disciplinary action resulted from findings of, first, soliciting professional employment and, second, borrowing substantial sums from a client in return for a note bearing a criminally usurious interest rate and then pleading usury as a defense to a suit on the note. *Florida Bar v. Pitts,* Fla. Supr., 219 So.2d 427, 428 (1969) (per curiam).

Another court has required in accordance with the Rules of the State Bar that one seeking reinstatement must make "amends and restitution" to all those who may have suffered pecuniary loss as a result of the misconduct that led to disbarment. *State v. Arnett,* Tex.Civ.App., 385 S.W.2d 452 (1964).

Some courts have held that even restitution may not be enough to justify reinstatement where misappropriation of funds led to disbarment. *In Re Smith,* Minn.Supr. [220 Minn. 197], 19 N.W.2d 324, 326 (1945) (reinstatement denied)."

Restitution is a factor to be considered, but that is not to say that we would require full restitution in every case in which clients' funds have been misappropriated. It is apparent from the language emphasized in *Bennethum* that there must be a healing of the wounds of those who suffered by reason of the misconduct. But full restitution is not necessarily the key to reinstatement. As stated in *Hawkins*: "A thoroughly bad man may make restitution . . . and a thoroughly good man may not be able to make any restitution at all." 87 A. at 247. The petitioner says "forgiveness" is the key. Maybe he is correct, but to be forgiven an attorney disbarred by reason of moral turpitude must bear the burden of forgiveness by those he has injured. In this case the injured are those whose funds were misappropriated and the entire Bar of this Court who have been forced to partially pay his debts through the Client Security Trust Fund. Some debts to individual clients remain unpaid after all these years. None of those appearing in this case, by testimony, by letter or otherwise, has expressed that much "forgiveness". At best we have before this Court a conditional forgiveness evidencing a continued lack of trust and confidence in petitioner's ability to handle funds. The future may favor such conditional forgiveness and the admission of attorneys to the Bar for limited purposes, as precedented somewhat today by permitting residents of this State licensed to practice elsewhere to engage in a limited practice in certain public programs under Supreme Court Rule 55. But at this time we are not inclined to permit a conditional readmission of this disbarred attorney to the Bar of this Court.

This is not to say that we do not favor rehabilitation. Quite the opposite is true given a record justifying readmission. But, in our judgment, the present record, for all its purposes, does not supply such justification. That condition is not necessarily permanent.

PETITION DENIED.