### In re Sidney J. CLARK, Petitioner.

Supreme Court of Delaware.

Submitted: May 27, 1992.
Decided: June 5, 1992.

Edmund N. Carpenter, II of Richards, Layton and Finger (argued), and Charles S. Crompton, Jr. of Potter, Anderson & Corroon, Wilmington, for petitioner.

Charles Slanina, Disciplinary·Counsel for the Bd. on Professional Responsibility, Wilmington.

Before HORSEY, HOLLAND, Justices, and HARTNETT, Vice Chancellor.[1]

PER CURIAM:

This proceeding is a Petition for Reinstatement filed by Sidney J. Clark ("Clark"). In February, 1969, Clark was disbarred because of his commingling and diversion to his own personal use of clients' funds in the approximate amount of $100,-000. *See In re Clark*, Del.Supr., 250 A.2d 505 (1969). A panel of the Board on Professional Responsibility ("the Board") conducted a hearing on Clark's petition, as required by Board Rule 23(f).

The Board filed a Final Report with this Court. In that Final Report, the Board recommended that Clark's Petition for Reinstatement be denied. The Board's adverse recommendation was based upon its concerns about Clark's present competence to practice law and the limited restitution

1. Sitting pursuant to Article IV, § 12 of the    Delaware Constitution.

he has made to the victims of his professional misconduct.

This Court has concluded that Clark has presented clear and convincing evidence that he is qualified for reinstatement subject to conditions not yet fulfilled. Bd. Prof.Resp.R. 23(h). This Court has also determined that the concerns of the Board, while clearly valid, do not preclude Clark's ultimate reinstatement provided he meets those concerns, which must be a condition of his reinstatement. Therefore, this Court has concluded that Clark's reinstatement will be conditioned upon, *inter alia,* making restitution as herein provided and his successful completion of the Delaware Bar Examination in its entirety.

## I.

The Board made findings of fact, in connection with the present application for reinstatement, which are set forth in its Final Report as follows:

1. Petitioner, Sidney J. Clark, is 63 years of age, and resides at 1003 E. Matson Run Parkway, Wilmington, Delaware, 19802. He has resided in Delaware continuously for almost 50 years.

2. After attending college and law school at Howard University in Washington, D.C., Petitioner was admitted to the practice of law before the Supreme Court of Delaware in January 1957.

3. Following his admission to the Delaware Bar, Petitioner commenced his legal career by serving as an Assistant City Solicitor for the City of Wilmington, Delaware, prosecuting criminal cases in the Wilmington Municipal Court. He served in that capacity from July 1957 to March 1961. In March 1961, he became a Municipal Court Judge, and he continued in that position until he resigned on June 1, 1966. When Petitioner resigned from the bench, he went into the full-time private practice of law.

4. In approximately 1966, Petitioner became involved in casino gambling and developed an addiction for gambling. Petitioner would frequently visit the casinos in Las Vegas and suffered huge losses which were far beyond his means, and eventually he began to use clients' money to cover his losses.

5. In April 1967, Petitioner's wife died of cancer after a prolonged illness. At the time of his wife's death, Petitioner's sons were ages 3 and 5. Near the same time, Petitioner went through a series of throat operations. Between gambling losses and medical bills he found himself heavily in debt and continued to gamble, hoping to win in order to pay his debts. Petitioner's conduct was compulsive; once he started a gambling session he was emotionally unable to stop and continued to lose far beyond his means.

6. Petitioner's name was stricken from the rolls of practicing attorneys before the courts of Delaware, by order of the Delaware Supreme Court in February 1969. The Court disbarred Petitioner because of Petitioner's commingling and diversion to his own personal use of clients' funds in the approximate amount of $100,000. *In re Clark,* Del.Supr., 250 A.2d 505 (1969).

7. Subsequently, Petitioner was indicted, tried and convicted in the Superior Court of the State of Delaware on two charges of embezzlement, and was sentenced to two concurrent five-year terms of imprisonment. On January 4, 1973 Petitioner was committed to the Delaware Correctional Center to serve those sentences. Petitioner commenced *habeas corpus* proceedings in the federal court system, and, ultimately, the United States Court of Appeals for the Third Circuit ordered that a writ of *habeas corpus* issue, and Petitioner was released in July 1974 after approximately eighteen months in custody. *See Clark v. Anderson,* 502 F.2d 1080 (3rd Cir.1974). *See also Matter of Clark,* Del. Supr., 406 A.2d 28, 29 (1979). Of the eighteen months he was in custody, eight or nine months were spent in prison, and the rest in a work release program in conjunction with Plummer House.

8. Following Petitioner's disbarment, the Internal Revenue Service had asserted tax liens against Petitioner, in the amount of approximately $72,000, for underpayment of federal income taxes on income

Petitioner earned in his last year of law practice, and also on the income he was deemed to have received by converting his clients' funds to his own use. The State of Delaware also filed liens in the amount of approximately $6,000.

9. Petitioner, through periodic payments and compromise, was able to settle these tax claims and was released from them in 1978. Although Petitioner has no record of exactly how much he paid to satisfy these tax liens, his estimate is that he paid less than $20,000 or $25,000.

10. After settlement of the tax liens, Petitioner filed a petition for conditional reinstatement June 1978, which was denied by the Delaware Supreme Court on July 6, 1979. *See Matter of Clark*, Del.Supr., 406 A.2d 28 (1979).

11. In July, 1980, Petitioner filed a second petition for reinstatement, which was denied by the Supreme Court in February 1981. *See In re Clark*, Del.Supr., 430 A.2d 1082 (1981) (ORDER).

12. In September 1982, Petitioner filed a third petition for reinstatement, which was denied by the Supreme Court in June 1983. *See In re Clark*, Del.Supr., 464 A.2d 879 (1983).

13. In June 1984, Petitioner filed a fourth petition for reinstatement, which was denied by the Supreme Court in September 1984. *See In re Clark*, Del.Supr., No. 170, 1984 (September 24, 1984) (ORDER).

14. Between 1969 and 1984, Petitioner made only one $25 restitution payment to any of those who had sustained financial losses as a result of his conversion of his clients' funds. Those who had sustained such losses included: Bayard Allmond, a Wilmington attorney (from whom Petitioner had diverted approximately $13,000); Buford Manlove (from whom Petitioner had diverted approximately $13,000); and the Clients' Security Trust Fund of the Bar of Delaware, an organization funded by Delaware lawyers, which had paid $62,046.24 in claims that arose out of Petitioner's other conversions of his clients' funds. After the 1984 denial of his fourth petition for reinstatement, Petitioner began making relatively small payments to the Allmond and Manlove families. Petitioner paid $1,500 to the Allmonds and $1,400 to the Manloves in this manner, but made no further payments after November 1988. Petitioner has made no payments to the Clients' Security Trust Fund.

15. During the time since denial of his fourth petition for reinstatement in 1984, Petitioner's employment and income have been sporadic. After being unemployed and in ill health during 1982 and 1983, Petitioner commenced employment in 1984 as an aide and companion for former Supreme Court Justice James M. Tunnell, Jr., who was afflicted with Alzheimer's disease. In this capacity, Petitioner earned $11,953 in 1984 and $14,987 in 1985. Petitioner continued to be employed by the Tunnell family until the spring of 1986, when Mr. Tunnell died. (No evidence was presented as to precisely how much income Petitioner received from the Tunnell family in 1986). In the fall of 1986, Petitioner became employed by Delaware Technical and Community College as a counselor for unemployed workers. In this job, he earned $8,097 in 1986 and $17,400 in 1987. This job was terminated, however, in June 1987, and Petitioner then received unemployment compensation from August 1987 until April 1988. There was no evidence of the amount of his unemployment compensation in 1987. In 1988, his income totalled only $3,500. In May 1989, he began working as an AIDS education coordinator for the Delaware Council of Crime and Justice, the position which he presently holds. His income for 1989 was $10,312 and it was approximately $19,500 in each of 1990 and 1991. He has also held other short-term, low-paying jobs from time to time, including an early-morning job (two hours per day) that he presently holds to supplement his income. He has also received loans and gifts at various times, which he has used for living expenses. He remains indebted for some of these loans.

16. Petitioner estimates that the present value of his home is approximately $175,000 and that the mortgage liens

against it are in the amount of approximately $100,000.

17. In the twenty-three years since he was disbarred, Petitioner's contact with law and legal matters has been limited. He was prohibited, of course, from engaging in the practice of law, and he honored that prohibition. He worked to some extent on legal issues while employed by Matlack between December 1969 and July 1974 (during part of which time he was imprisoned), and also while employed by DuPont from December 1975 to May 1982. He described his involvement in legal matters while employed at DuPont as "marginal." However, he has had virtually no law-related employment work in the past ten years. Since disbarment, he has taken no law school courses, Continuing Legal Education courses or other professional practice courses. He is aware of the Delaware Supreme Court's Mandatory Continuing Legal Education requirements and the availability of CLE courses, but he testified that it would have been embarrassing and expensive for him to attend such courses. He has attempted to stay current on legal issues by reading monthly publications of the National Bar Association, some publications of the American Bar Association, and annotations of the Delaware Code to which he has had access, and by engaging in discussion of legal issues with other lawyers.

18. At the hearing before the Board, Petitioner presented an impressive array of credible and distinguished witnesses who testified in favor of his reinstatement. They included: Quentin Primo, a retired Episcopal bishop; Robert C. O'Hara, a lawyer and former Superior Court Judge; James M. Baker, the President of the Wilmington City Council; Charles M. Oberly, III, the Attorney General of Delaware; Charles H. Toliver, IV, a current Superior Court Judge; Irenee du Pont, Jr., a retired DuPont company executive and financial benefactor of the Petitioner; Herman M. Holloway, Sr., a Delaware State Senator; Norman N. Aerenson, a Wilmington lawyer and another benefactor of Petitioner; Arnetta McRae, a DuPont Company lawyer and neighbor of the Petitioner; and Kathryn Hazeur, a retired school principal and neighbor of the Petitioner. These witnesses corroborated Petitioner's testimony that he had conquered the gambling habit that had led to his thefts of client funds and subsequent disbarment. They also testified to Petitioner's success since disbarment in raising and educating his two sons and caring for his elderly mother, and his good standing in the community generally. They testified that, although they were not familiar with the details of Petitioner's income and expenses, they believed from outward appearances that Petitioner's financial resources were quite meager and that he was living a "hand-to-mouth" lifestyle. These witnesses also testified to Petitioner's sharp intellectual capacity, and his continuing interest in the law and legal matters. Each of these witnesses expressed the opinion that the Petitioner had been punished long enough for his transgressions, and that the reinstatement of Petitioner would not be adverse to the administration of justice or to public confidence in the legal system.

Similar testimony and opinions were expressed in a letter submitted to the Board by Delaware State Representative Terry Spence. Other witnesses were prepared to give similar testimony, but, because of the cumulative nature of the testimony, Disciplinary Counsel and counsel for the Petitioner stipulated that such testimony would have been similar to that given by Petitioner's witnesses named above. These additional witnesses included: Loraine Sitler, Director of the Delaware Council on Crime and Justice (Petitioner's present employer); Reverend Maurice Mayer, a Wilmington minister; Dr. Woodrow Wilson, a Wilmington dentist; Joshua W. Martin, formerly a Superior Court Judge and presently an executive with Diamond State Telephone Company; Gregory M. Sleet, a Delaware Deputy Attorney General; Rosetta Henderson, a consultant for a joint venture between the DuPont Company and Merck; and Lorin P. Hunt, a retired magistrate and community center director.

19. In opposition to Petitioner's application of reinstatement, Disciplinary Counsel

presented the testimony of Joseph M. Kwiatkowski, a Delaware lawyer and Treasurer of the Clients' Security Trust Fund. Mr. Kwiatkowski indicated that the Trustees of the Fund had voted to oppose Petitioner's application because Petitioner had not made any restitution to the Fund. Mr. Kwiatkowski also presented the Trustees' written opposition to Petitioner's application.

It was also stipulated that Disciplinary Counsel's witnesses, Linda Manlove and Charles Allmond, would have testified that Petitioner had made restitution to the Manlove and Allmond families in the total amount of only $2,900 and that Petitioner had made no restitution payments to them "in the past couple of years" (actually, slightly more than three years, according to Petitioner's testimony).

## II.

We begin our examination of Clark's present (fifth) Petition for Reinstatement by noting, once again, the analogy between Clark's disbarment and the disbarment reported as *In re Hawkins*, Del.Super., 87 A. 243 (1913). Both matters involved disciplinary proceedings that originated with the theft of clients' funds. When this Court denied Clark's Petition for Reinstatement in 1979, it quoted the following language from *Hawkins:*

> We do not think it should be easy for an attorney who has committed a crime to retain or regain his membership in the profession. On the contrary, the conditions imposed should be difficult and exacting.
>
> *       *       *       *       *       *
>
> The facts that impress us as of most importance in such cases are these: That the wrongdoer has been severely and adequately punished; that he has sincerely repented of his crime; that he has lived such a life for a considerable period of years since his disbarment that lawyers and laymen alike are satisfied he is an honest and upright citizen, of clean habits and good character, and likely to be in the future, if given a chance, a

useful and honest member of the bar and society.

*In re Clark*, Del.Supr., 406 A.2d 28, 31 (1979) (quoting *In re Hawkins*, 87 A. at 247).

█ In this matter, the record reflects that a considerable period of time has elapsed since Clark's disbarment. Clark presented testimony in support of his Petition for Reinstatement from an impressive array of prominent persons and distinguished citizens. That testimony constituted clear and convincing record evidence establishing Clark's present good character, reformation and repentance, which is uncontradicted. *See In re Clark*, 406 A.2d at 31. The Board found that each of the witnesses testifying in support of Clark's Petition for Reinstatement was of the opinion that Clark had been punished long enough for his transgressions, and that his reinstatement would not be adverse to the administration of justice or to public confidence in the legal system.

## III.

However, Clark had additional burdens to sustain. Rule 23(f) of the Board provides that a petitioner for readmission to the Bar

> ... shall have the burden of demonstrating, by clear and convincing evidence, rehabilitation, compliance with all applicable discipline orders and rules, fitness to practice and competence, and that the resumption of the practice of law within Delaware will not be detrimental to the administration of justice.

Bd.Prof.Resp.R. 23(f).

One of the Board's two concerns in the present matter was whether Clark had "complied with all applicable discipline orders." *See* Bd.Prof.Resp.R. 23(f). When this Court denied Clark's Petitions for Reinstatement in 1981 and 1983, it found "insufficient compliance by petitioner with the factors outline in our Opinion of 1979." *In re Clark*, Del.Supr., 464 A.2d 879, 880 (1983). When this Court denied Clark's Petition for Reinstatement in 1984, it stated "[f]urther application for reinstatement by petitioner will not be considered by this

Court absent substantial payments to the innocent victims." *In re Clark*, Del.Supr., No. 170, 1984, McNeilly, J. (Sept. 24, 1984) (ORDER). The Board concluded that Clark had not complied with this Court's 1984 directive.

■ The Board's Final Report quite properly observes that the issue of restitution has been at the center of each of Clark's four previous applications for readmission. In support of his present petition, Clark relies upon the efforts he made at restitution after his last Petition for Reinstatement was denied in 1984, to wit: he actually reached an agreement with both individual claimants (then represented by Charles Allmond, after the death of Bayard Allmond, and by Linda Manlove, the real owner of the Manlove claim, who had reached her majority). Pursuant to those agreements, regular payments commenced in the 1986–1988 period and some $2,900 was remitted by Clark to these two claimants ($1,500 to one and $1,400 to the other, the discrepancy arising because of a one-month delay in the second agreement). When at least one of the claimants pressed for a lump sum payment, Clark attempted to arrange bank and private loans to do so.

When this Court denied Clark's Petition for Reinstatement in 1979, it stated that "[r]estitution is a factor to be considered, but that is not to say that we would require full restitution [prior to reinstatement] in every case in which clients' funds have been misappropriated." *In re Clark*, 406 A.2d at 33. This Court observed that "a thoroughly bad man may make restitution ... and a thoroughly good man may not be able to make restitution at all." *Id.* (quoting *In re Hawkins*, 87 A. at 247). Given Clark's limited financial resources, the record reflects that since 1984, Clark has made efforts to discharge his obligations to the individual claimants.

When this Court denied Clark's application in 1979, it stated that "an attorney disbarred by reason of moral turpitude must bear the burden of forgiveness by those he has injured. In this case the injured are those whose funds were misappropriated and the entire Bar of this Court who have been forced to partially pay his debts through the Clients' Security Trust Fund." *Id.* Clark has always maintained that it was his desire and his intention to make full restitution. Therefore, notwithstanding the fact that full restitution is not necessarily a prerequisite to reinstatement, the history of this case requires that Clark make restitution to the *individual* claimants as a condition of his reinstatement. Bd.Prof.Resp.R. 23(h). In addition, Clark must make restitution *or* execute an interest-bearing confessed judgment promissory note,[2] in favor of the Clients' Security Trust Fund, for the principal amount it expended on Clark's behalf ($62,046.24), as a condition of his reinstatement. *Id. See also In re Bennethum*, Del.Supr., 278 A.2d 831 (1971) (reinstatement with arrangements for restitution).

## IV.

The second area of concern to the Board was Clark's present competence to practice law. That concern is justified. This Court has recently noted that "lead[ing] a good life free of criminal conduct and ethical misdeeds is not proof of ... current professional competence." *In re Reed*, Del.Supr., 584 A.2d 1207, 1209 (1990).

■ The Court recognizes that it is difficult to establish fitness and competence to practice law for an attorney who has been prohibited from demonstrating that fitness and competence for some 23 years. *Id.* Clark has, of course, not been engaged in the practice of law since his disbarment. Some of the jobs Clark has held involved some contact with legal issues. Clark has made attempts to stay current on legal issues by reading monthly publications of the National Bar Association, some publications of the American Bar Association, and

---

2. Said promissory note must be secured by a mortgage on Clark's residence and must also be entered as a confessed judgment, pursuant to the Civil Rules of the Superior Court. However, said mortgage and confessed judgment note must provide for their subordination to any lien incurred to make restitution to Manlove and Allmond possible. Said mortgage may be junior to any liens of record on the date of the Board's hearing.

annotations of the Delaware Code to which he has had access, and by engaging in discussion of legal issues with other lawyers. However, Clark has had no opportunity to "demonstrate" his competence by actual practice.

Nevertheless, the unrebutted testimony in the present record reflects Clark's intellectual acumen, his "sharp intellectual capacity," and his aptitude for a "continuing interest in the law and legal matters." This is not a case like the most recent *Reed* proceeding. *In re Reed*, Del.Supr., 584 A.2d 1207 (1990). In that case, the attorney involved had a series of ethical violations over a period of time. *See In re Reed*, Del.Supr., 429 A.2d 987 (1981); *In re Reed*, Del.Supr., 394 A.2d 221 (1978); *In re Reed*, Del.Supr., 369 A.2d 686 (1977). Consequently, in the 1990 *Reed* case, the issue was not only the attorney's present competence to practice law but also an absence of clear and convincing evidence of his *professional* rehabilitation. *In re Reed*, 584 A.2d at 1209 (finding multiple failures to meet ethical standards directly related to the practice of law).

The record reflects that Clark was once a successful practicing lawyer, and a member of the Judiciary. His disbarment was for a reason unrelated to his legal abilities. *But see In re Reed*, Del.Supr., 584 A.2d 1207 (1990). The testimony presented in this proceeding established that Clark *should* be able to competently resume the practice of law when, and if, permitted to do so. But more importantly, the record also reflects that Clark has agreed to demonstrate his present professional competence to practice law by passing the Delaware Bar Examination as a condition of his reinstatement. This Court has concluded that, based upon the present record, Clark's successful completion of the regularly scheduled Delaware Bar Examination, in its entirety, must be a condition of his reinstatement. Bd.Prof.Resp.R. 23(h).

## V.

Rule 23(h) of the Rules of the Board on Professional Responsibility provides:

**(h) Conditions of Reinstatement.** If the petitioner fails to establish that he is qualified for reinstatement, the petition shall be dismissed by the Court. If the petitioner is found to be qualified to again practice law, the Court shall reinstate him, provided that the Court may condition reinstatement upon the payment of all or part of the costs of the proceedings, upon restitution and upon proof of competency, including certification by the Bar Examiners of the successful completion of an examination for admission to practice administered subsequent to the suspension or disbarment.

Bd.Prof.Resp.R. 23(h).

Having duly considered the findings of fact and conclusions of the Board, together with the oral argument of counsel in this Court, and the record of all proceedings before the Board, the Court has concluded that Clark has presented clear and convincing evidence that he is qualified to be reinstated, subject to the conditions stated and hereafter detailed. In accordance with Board Rule 23(h), Clark's reinstatement is expressly conditioned upon his *complete* compliance with *all* of the following terms:

(a) payment of all costs of these proceedings;

(b) certification of payment of restitution to the individual claimants, Manlove and Allmond, of the entire principal amount owed or certification that those claims have otherwise been resolved to the satisfaction of Manlove and Allmond;

(c) certification of payment of restitution of the principal amount owed to the Clients' Security Trust Fund or certification that Clark has executed a confessed judgment promissory note,[3] in favor of the Clients' Security Trust Fund, for the principal amount it expended on Clark's behalf ($62,-

---

**3.** Said promissory note must be secured by a mortgage on Clark's residence and must also be entered as a confessed judgment, pursuant to the Civil Rules of the Superior Court. However, said mortgage and confessed judgment note must provide for their subordination to any lien incurred to make restitution to Manlove and Allmond possible. Said mortgage may be junior to any liens of record on the date of the Board's hearing.

046.24), providing for interest only to be paid monthly at the rate of six percent per annum, from the date of the promissory note, with the entire principal amount plus interest payable on July 1, 1999;

(d) certification by the Board of Bar Examiners that Clark has successfully passed, anonymously, the regularly scheduled Delaware Bar Examination in its entirety; *and*

(e) the continuation of the good moral character reflected in the present record.

In *In re Hawkins*, prior to granting the Petition for Reinstatement, this Court made the precedential significance of its decision clear:

> In concluding these remarks we desire to say a few words about the effect of our decision in this case, because we confess it is a feature which has given us much concern. We have before observed, that as a protection and safeguard in future cases, we imposed in this case certain conditions which it will be impossible to meet except in a meritorious case. The court is not likely to be embarrassed hereafter in any application for reinstatement if it is understood that an attorney who has been disbarred will not be reinstated unless his application is supported by proofs, resolutions and recommendations as strong, full and convincing as those presented in the present case; nor unless a considerable period of time has elapsed since his disbarment. The decision in every case must depend, of course, upon its own facts and circumstances, and the present decision cannot be regarded as a precedent which shall govern any other case unless the facts and circumstances are sustantially [sic] similar.

*In re Hawkins,* 87 A. at 248.

Those observations are equally applicable to this Court's present disposition. Clark's reinstatement shall become effective only upon his subsequent demonstration to this Court that he satisfactorily completed all of the conditions imposed by this decision and only upon the entry of a subsequent order by this Court to that effect.