STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, v. RUSSELL R. STROM, JR., RESPONDENT.

201 N. W. 2d 391

Filed October 20, 1972. No. 38198.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for relator.

Russell R. Strom, Jr., and William L. Walker, for respondent.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

This is a disciplinary proceeding brought by the Ne-

braska State Bar Association against Russell R. Strom, Jr., a lawyer practicing in Lancaster County, Nebraska. Pursuant to complaint entered by Mrs. Dorina M. Neal, hearing was had before the Committee on Inquiry of the Nebraska State Bar Association for District No. 3 (Lancaster County). Defendant waived further proceedings to be had before a referee and complaint was filed in this court on the record made before the Committee on Inquiry.

The defendant had represented Mrs. Neal in a personal injury action and obtained a settlement of $6,000. His fee was $1,700. The complaint charges a wrongful conversion by defendant to his own uses of the $4,300 balance due Mrs. Neal.

The following facts are undisputed. On receipt of the $6,000 settlement check, defendant deposited on April 16, 1970, $5,600 in a trust account and took $400 in cash. This brought the trust account up to $5,636.48. The following checks were then paid out of the account: $248.60, dated April 8, 1970, payable to the Internal Revenue Service; $1,926.40, dated April 13, 1970, to Herbert Robins Bunting and Roland Albert Bunting; $289.81, dated April 16, 1970, to Luann Kobza, defendant's secretary; $800, dated April 17, 1970, to defendant; $1,000, dated April 21, 1970, to defendant; and $200, dated May 11, 1970, to defendant. There then remained in the trust account a balance of $658.26 as of May 11, 1970.

The $6,000 check was received by defendant on April 16, 1970. Mrs. Neal failed to receive a remittance until receipt of defendant's check for $4,300, dated May 25, 1970. It was returned for "insufficient funds." She contacted defendant by telephone and was told: "* * * the reason that the check was returned was that he had settled another case, deposited an insurance check in that settlement, and given his client's share of that settlement by his check; and that after this client had cashed the check he had given to her, the insurance

company had stopped payment on its check because of a disagreement as to figures involved in the settlement, and that this was the reason that the check he had given to me had bounced." Defendant's account fails to reveal such transaction. Following other telephone conversations, Mrs. Neal was told in the third week of June 1970, to redeposit the check. It was again returned unpaid. Pursuant to several more telephone conversations, she received, on July 20, 1970, a telegram saying defendant's check was in the mail. On failing to receive the check she again called defendant and was told it had been mailed on Thursday instead of Monday. It again failed to materialize. She was then informed the letter had been misaddressed. She asked that he stop payment on the missent check and forward another at once. After several other telephone calls, Mrs. Neal consulted an Oklahoma attorney on July 27, 1970, and was referred to the Lancaster County Committee on Inquiry. On August 7, 1970, she presented the original check at the Lincoln bank on which it was drawn. Again payment was refused. She was unable to contact defendant but he called her at her son's home in Lincoln on August 9, 1970. He said he had mailed a check to her on August 7, 1970. It was never received. She demanded cash and he agreed to get the money on the morning of August 10, 1970, then said he would have it the next day, August 11. The alleged check of August 7, 1970, not having been delivered to her home in Oklahoma, Mrs. Neal, on the afternoon of August 11, 1970, called at the office of a member of the Committee on Inquiry and executed an affidavit setting out the foregoing facts, concluding with the following: "I request that this Affidavit be considered my Complaint against Russell R. Strom, Jr., and that said Complaint be referred to the Committee on Inquiry of the Nebraska State Bar Association for Judicial District No. 3."

On August 11, 1970, Mrs. Neal consulted a Lincoln lawyer about the collection of the funds due her and

a copy of her affidavit was supplied to this lawyer. On August 13, 1970, defendant borrowed from a Lincoln bank and paid Mrs. Neal. Subsequently, on September 15, 1970, she wrote the member of the Committee on Inquiry whom she had consulted, confirmed that defendant had paid her, and stated:

"The matter has been resolved satisfactorily. Since I was pleased with the way Mr. Strom handled my case, and since I have received the amount of the settlement, plus an additional amount for loss and expenses, I do not wish to file charges.

"Thank you very much for your assistance while I was in Lincoln."

The foregoing is also undisputed. Thereafter she was contacted by defendant and on November 18, 1970, made a further purported affidavit disclaiming the first affidavit she gave and claiming she had authorized defendant to use her funds. Defendant contends he had borrowed the money from her.

In regard to the Bunting check for $1,926.40, dated April 13, 1970, it appears that this was in payment of distributive shares due from an estate for which defendant was attorney and administrator. Although no charge is made in regard to these funds, it appears they should have been kept in an administrator's account and, in any event, there were not sufficient funds in the trust account to pay the check when it was drawn.

There is further evidence that Mrs. Neal was fully aware of the import of the first affidavit she executed. She knew the Committee on Inquiry was a disciplinary committee, that her affidavit constituted a complaint against the defendant, and that she would have to employ other counsel for the purpose of collecting her money. In view of her persistent efforts, starting soon after the settlement of her case, to obtain payment of the funds due her, and the failure of the defendant to contradict her statements in this respect, it is apparent that her subsequent statement to the effect that

defendant was authorized to keep and use her money is not worthy of credence. If she did not understand she was commencing a disciplinary proceeding and not one to collect the funds due her, why did she seek other counsel for the latter purpose? Furthermore, at a preliminary hearing before the Committee on Inquiry, defendant failed to claim or even intimate that he had obtained a loan from Mrs. Neal and the fact the funds were deposited in a trust, rather than a personal account, belies this contention.

We conclude that defendant violated Canon 1 of the Code of Professional Responsibility and Canons of Judicial Ethics providing as follows: "DR 1-102 Misconduct. (A) A Lawyer shall not: * * *

"(3) Engage in illegal conduct involving moral turpitude.

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Defendant was also in violation of Canon 9 and Disciplinary Rule 9-102 (B) (4). "(B) A lawyer shall: * * *

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Under Canon 9, Ethical Considerations, EC 9-5 states: "Separation of the funds of a client from those of his lawyer not only serves to protect the client but also avoids even the appearance of impropriety, and therefore commingling of such funds should be avoided."

"A license to practice law in this jurisdiction is granted on the implied understanding that the party receiving it shall at all times demean himself in a proper manner and abstain from such practices as cannot fail to bring

discredit to himself, the profession, and the courts. * * *

"Violation of any of the ethical standards relating to the practice of law, or any conduct of an attorney in his professional capacity which tends to bring reproach on the courts or the legal profession, constitute grounds for suspension or disbarment." State ex rel. Nebraska State Bar Assn. v. Rhodes, 177 Neb. 650, 131 N. W. 2d 118. See, also, State ex rel. Nebraska State Bar Assn. v. Jensen, 171 Neb. 1, 105 N. W. 2d 459.

Ordinarily the conversion by a lawyer of trust funds in his possession is deemed cause for disbarment. It is therefore adjudged that defendant be disbarred.

Judgment of disbarment accordingly.

JUDGMENT OF DISBARMENT.

SPENCER, J., not participating.