**In the Matter of the Discipline of Steven L. PIER, as an Attorney at Law.**

**No. 17413–FEH.**

Supreme Court of South Dakota.

Argued May 22, 1991.

Decided July 10, 1991.

R. James Zieser, Tyndall, for complainant Disciplinary Bd.

Gerald L. Reade, Brady, Reade & Johnson, Yankton, for respondent Pier.

HENDERSON, Justice.

This is a disciplinary proceeding under the provisions of SDCL ch. 16–19 against Steven L. Pier (Respondent), a member of the State Bar of South Dakota. By formal accusation filed on March 6, 1991, Respondent was accused of expending client funds for his own personal use and benefit from June 23, 1989 to October 25, 1989. This is a violation of the South Dakota Rules of Professional Conduct; in particular the Disciplinary Rules within Rule 1.15;[1] and the Disciplinary Rules within Rule 8.4.[2]

Respondent answered the formal accusation on April 1, 1991. The answer generally admitted the wrongdoing but offered various affirmative defenses to be considered in mitigation of his actions.

The Disciplinary Board determined that Respondent was retained as counsel by Olga Anderson (Anderson) to handle the estate of her deceased husband on or about May 25, 1989. On or about June 23, 1989, while acting as attorney for Anderson, Respondent went to the First National Bank

1. SAFEKEEPING PROPERTY.

(A). A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with the representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the State where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such accounts, funds and other property shall be kept by the lawyer and shall be preserved for a period of five (5) years after termination of the representation.

(B). Upon receiving funds or other property in which a client or third person has an interest a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or the third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

2. MISCONDUCT

It is professional misconduct for a lawyer to:

(A). Violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(B). Commit a criminal act that reflects adversely on the lawyer honesty, trustworthiness or fitness as a lawyer in other respects;

(C). Engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [.]

of Freeman, South Dakota and cashed two certificates of deposit owned by Anderson and her deceased husband. Subsequently, Respondent secured a bank money order in lieu of the before-mentioned certificates in the amount of $46,079.14. Shortly thereafter, Respondent deposited this bank money order into his personal checking account. Respondent used these funds for his own personal use and benefit beginning on June 23, 1989, until October 25, 1989, when all funds had been expended. Respondent was eventually asked about the whereabouts of the funds by Anderson and a banker friend, James Pesek (Pesek). He lied to both of them in the fall of 1989 and in the spring of 1990, stating that the funds were on deposit with the Edward D. Jones Investment Company in Yankton, South Dakota. He further lied to Anderson and Pesek about the location of the funds during the morning of September 17, 1990, claiming that there has been some kind of mix-up at the Livestock State Bank. Later that day Respondent admitted that he took the money for his own personal use and benefit. On or about September 21, 1990, Respondent borrowed sufficient funds from his family and reimbursed Anderson $50,760.75 for the money taken plus interest. The Disciplinary Board has recommended Respondent's disbarment.

■ We need not give deference to the Board's recommendation for sanctions. The ultimate decision for discipline of members of the State Bar rests with this Court. *Matter of Discipline of Stanton*, 446 N.W.2d 33 (S.D.1989); *Matter of Discipline of Dana*, 415 N.W.2d 818 (S.D.1987).

■ As we have stated many times, the purpose of disciplinary proceedings is not to punish an attorney but to protect the public from further wrongdoing by an attorney. *Matter of Discipline of Kirby*, 336 N.W.2d 378 (S.D.1983). Appropriate discipline in any given case necessarily depends upon the seriousness of the misconduct by the attorney and the likelihood of repeated instances of similar misconduct. *Id.* at 380.

We find, and Respondent admitted, that his conversion of these funds for his own use was willful and knowing. Conversion of client funds is one of the most serious acts of lawyer misconduct. The foundation of an attorney's relationship with clients and the legal system is trust. Converting a client's funds violates this fundamental principle of the lawyer-client relationship. Further, it places the lawyer's personal pecuniary interest above the client's interests, which the lawyer has undertaken to protect and promote. Therefore, discipline is warranted. We have held that failure to account for a client's funds is grounds for revocation of an attorney's license. *In re Rude*, 221 N.W.2d 43 (S.D.1974). Other jurisdictions state that such misconduct should warrant the most severe discipline—license revocation. *See*, Committee on *Professional Ethics and Conduct v. Piazza*, 405 N.W.2d 820 (Iowa 1987); *Nebraska State Bar Ass'n. v. Strom*, 189 Neb. 146, 201 N.W.2d 391 (1972); *Kentucky Bar Ass'n. v. Grogan*, 554 S.W.2d 81 (Ky.1977).

An attorney who violates a trust by misappropriating funds of clients strikes at the heart of the lawyer-client relationship. In the present case, Respondent deliberately took a substantial amount of funds belonging to his client, without her knowledge and used it for his own purposes. This conduct is egregious, displaying an unfitness to practice law. Therefore, we determine that Respondent's misconduct warrants disbarment. Although Respondent admits that he has done wrong, he maintains his misconduct was mitigated by a negative cash flow in a newly formed law practice and financial hardship caused by domestic troubles with his wife. However, as this Court stated in *Rude:* "Financial problems, however, do not excuse nor do they justify a course of conduct in the handling of a client's funds that leads to the misallocation or withholding, however temporary, of such funds."

We are convinced that the public must be protected from future acts of this nature, and, thus, we do not hesitate to rule that disbarment is justified in this case.

MILLER, C.J. and WUEST, J., concur.

SABERS, J., concurs in result.

AMUNDSON, J., dissents.

SABERS, Justice (concurring in result).

I agree with the spirit of Justice Amundson's writing but feel that the public will best be served if attorney Pier is required to apply to this court for reinstatement. In that way, we can best determine whether "his professional life is redeemable" and "his career as an attorney can be salvaged." *See, e.g., Matter of Voorhees,* 403 N.W.2d 738 (S.D.1987). Therefore, I concur in the result of the majority opinion and vote for disbarment, not suspension.

AMUNDSON, Justice (dissenting).

I dissent.

The facts and the law in this case are not in dispute. Respondent has admitted that he converted his client's funds for maintaining the life style he and his wife had become accustomed to during their marriage. It is also evident this act was committed by respondent during a time in his life when his marriage was proceeding through troubled waters.

There is no question an act of this nature is a serious matter which warrants sanction. Where I part company with the majority is on what constitutes an appropriate discipline under the facts of this particular case. The Nebraska Supreme Court dealt with an attorney's misuse of a client's funds in the case of *State ex rel. Nebraska State Bar Association v. Miller,* 225 Neb. 261, 265–66, 404 N.W.2d 40, 43 (1987), and held as follows:

> While we have previously held that conversion of a client's funds requires disbarment, we have also held that 'disbarment is inappropriate in the absence of specifically delineated injuries' to a client as the result of an attorney's misconduct. In addition, we have held that mitigating circumstances shown in the record should be considered in determining an appropriate discipline.

> . . . . .

> While an attorney's restitution of a client's converted funds *prior* to being faced with accountability may not exonerate such misconduct, restitution prior to complaint or prospective accountabili-

ty is a significant mitigating factor to be considered in determining an appropriate sanction for an attorney's conversion of a client's funds. Such view of restitution will encourage an attorney to correct a wrong before damage is sustained by a client.

(Citations omitted; emphasis in original). The court concluded since this was a single, isolated incident and the attorney had cooperated with the counsel for discipline, a two-year suspension with conditions for reinstatement was an appropriate sanction.

Respondent in this case has made restitution and has cooperated with the Disciplinary Board (this court was not required to appoint a referee in view of this cooperation). This was an isolated incident on his part. He has no prior record with the Board, he had a good reputation with the local bar, and is sincerely remorseful for this incident. *Comm. on Professional Ethics & Conduct v. Rauch,* 417 N.W.2d 459 (Iowa 1988); *State ex rel. Neb. State Bar Ass'n v. Fitzgerald,* 227 Neb. 90, 416 N.W.2d 28 (1987). In fact, respondent's client herself filed an affidavit with this court stating "I would not like to see [Respondent] disbarred and hope he can continue to practice law." This is the first time that I can recollect such a request from a victim in my years as a practicing attorney and past member and chairman of the Disciplinary Board. The usual request from victims is that the attorney receive the maximum discipline allowable under the law if not also being required to relinquish their blood, sweat, and hide. Finally, there has been no "specifically delineated injury" shown to have been sustained by the client in this case.

This is not a case where respondent had a plethora of past and present complaints with the Board, had an obstructionist attitude toward the authority of the Board, treated any communication from the Board as an "unsolicited invitation to join a book club," or had a twenty-three-year history of failing to file, report, or pay federal income tax, as shown by the facts in our prior decisions of *Matter of Discipline of Simpson,* 467 N.W.2d 921 (S.D.1991); *Matter of Discipline of Stanton,* 446 N.W.2d

33 (S.D.1989), and *In re Rude,* 88 S.D. 416, 221 N.W.2d 43 (1974).

There is no question that the public is entitled to protection from unethical attorneys but this can be accomplished without the imposition of disbarment. Also, when considering the likelihood of respondent becoming a repeat offender, I must conclude on this record that it is improbable. *Matter of Discipline of Kirby,* 336 N.W.2d 378 (S.D.1983).

In this case, respondent had a difficult time accepting the inevitable breakup of his marriage which caused him to suffer emotionally and financially. I agree with the statement in the dissent in *Stanton:* "Mindful that we are all susceptible to great mental anxiety in this profession, and coupled with Stanton's personal problems, I would attempt to temper justice with mercy, believing that his professional life is redeemable." 446 N.W.2d at 43 (Henderson, J., dissenting). Respondent was obviously incapable of coping with the breakup of his marriage and the bad cash flow in his new partnership endeavor, and converted these funds in an attempt to salvage his marriage by maintaining his wife in a manner which she had become accustomed to and demanded. Notwithstanding these frailties of respondent, I am convinced that his career as an attorney can be salvaged if a lesser sanction would be imposed in this particular case.

Therefore, I would suspend respondent from the practice of law for three years retroactive to the date when he voluntarily discontinued his active practice. I would further require that respondent successfully complete the ethics portion of the state bar examination prior to his being reinstated.