1997 SD 23

**In the Matter of the Petition of Steven L. PIER for Reinstatement to the Practice of Law.**

No. 19850.

Supreme Court of South Dakota.

Argued Dec. 4, 1996.

Decided March 5, 1997.

Laurence J. Zastrow, Board Counsel, Pierre, for Disciplinary Board.

John Simko of Woods, Fuller, Shultz & Smith, Sioux Falls, for petitioner.

KONENKAMP, Justice.

[¶ 1] This case requires us to decide what exceptional requirements a lawyer disbarred for theft must demonstrate to be readmitted to practice. Steven L. Pier was disbarred by order of this Court on July 10, 1991. *Matter of Pier*, 472 N.W.2d 916 (S.D.1991). He now applies for reinstatement pursuant to SDCL 16–19–84. Considering his payment of full restitution, his moral and professional rehabilitation, and the favorable recommendation of the State Bar Disciplinary Board, we grant a conditional reinstatement.

### Background

[¶ 2] Pier graduated from the University of South Dakota School of Law and was admitted to the bar by virtue of the diploma privilege in 1981. He moved to Yankton and worked there as a deputy state's attorney and in private practice through 1989, when the circumstances resulting in his disbarment transpired. In that year, Olga Anderson hired Pier to probate her husband's estate. As the particulars are chronicled in *Pier I*, 472 N.W.2d at 916–17, we note here only that Pier cashed two of Anderson's certificates of deposit, deposited the $46,079.14 in his own checking account, and, in the succeeding four months, spent it all for personal benefit. In the fall of 1989 and the spring of 1990, Pier twice lied to both Anderson and a Yankton banker about the location of the money, suggesting it was deposited with a local investment firm or had been the subject of some confusion at the bank. In September, however, Pier admitted he had taken the funds and, shortly afterwards, borrowed from his parents to reimburse Anderson $50,760.75 for the money taken plus interest.

[¶ 3] Pier admitted his wrongdoing to the Disciplinary Board, but in mitigation he revealed severe stress from a disintegrating marriage and financial pressures in a new law partnership. His marriage later ended in divorce. Although we dislike exposing material detailing a person's private anguish, in view of his request for reinstatement, it is important to understand what stresses accompanied his ethical lapses. In the fall of 1988, his wife lost her job, so in 1989 they were trying to live on his income alone. Both Pier and his wife were taking prescription medication for depression as their deteriorating marital problems created increasing strain. During marriage counseling, Pier learned for the first time his wife had been in a relationship with another man. Pier and his wife separated, but he was still trying to save his marriage when the events leading to his disbarment occurred. The Disciplinary Board found Pier had misappropriated client funds in violation of Disciplinary Rule 1.15, Safekeeping Property, and Rule 8.4, Misconduct, and recommended disbarment.

[¶ 4] Finding the misappropriation inexcusable, this Court accepted the Board's recommendation, stating, "We are convinced that the public must be protected from future acts of this nature, and, thus, we do not hesitate to rule that disbarment is justified in this case." *Pier I*, 472 N.W.2d at 917. Though Pier avows he always intended to return the money before the theft was discovered, "such intent, if it existed, in no degree deprived [his] acts of their unprofessional and wrongful character." *Matter of Kaas*, 39 S.D. 4, 6, 162 N.W. 370, 370 (1917).

[¶ 5] No criminal proceedings were ever brought against Pier. Mrs. Anderson, the victim, not only hoped to spare him professional discipline, but also criminal liability. Yet the Disciplinary Board noted his actions were chargeable under SDCL 22–30A–10, Embezzlement of Property Received in Trust, and SDCL 22–30A–17(1), Grand Theft. A letter in the disciplinary file from an assistant attorney general specifies that Anderson's reluctance to testify and the ongoing bar discipline process contributed to a decision not to charge him. Despite how we might personally discern the prosecutive merits, as tribunals sworn to uphold due process of law, we cannot impute upon a person's record a felony never charged. Nonetheless, stealing client funds is grave misconduct, even if no criminal conviction

results. *See Matter of Barton,* 291 Md. 61, 432 A.2d 1335, 1337 (1981).

[¶ 6] After hearing his petition for reinstatement pursuant to SDCL 16–19–83, –84, & –87,[1] the Disciplinary Board found Pier established by clear and convincing evidence he should be reinstated. It recommended the following conditions: (1) that he pass the bar exam, including the ethics portion; and (2) that he be supervised for two years by a member of the South Dakota Bar approved by the Court.[2] Finding he had "led an exemplary life since his disbarment," the Board accepted Pier's explanation his misconduct was aberrant and out of character, and thus was unlikely to reoccur.

### Decision

[¶ 7] We are not bound to accept the Disciplinary Board's recommendation, although we give it "careful consideration." *Petition of Reutter,* 500 N.W.2d 900, 902 (S.D.1993); *Petition of Draeger,* 463 N.W.2d 346, 347 (S.D.1990); *Petition of Husby,* 426 N.W.2d 27, 28 (S.D.1988). To decide whether to follow the Board's proposal, we must thoroughly examine the particular merits of this case, as well as weigh the overall propriety of reinstating a lawyer who stole money from a client, "one of the most serious acts of lawyer misconduct … [which] strikes at the heart of the lawyer-client relationship." *Pier I,* 472 N.W.2d at 917. In the past, we have considered a handful of cases of lawyers who have misappropriated client funds. *See, e.g., Matter of Coacher,* 438 N.W.2d 549

(S.D.1989)(disbarring a lawyer who pled nolo contendere to grand theft by embezzlement pursuant to SDCL 22–30A–10 & –17 for stealing money from clients); *Kaas,* 39 S.D. at 7, 162 N.W. at 371 (disbarring a lawyer who stole money from clients). We have yet to resolve the question presented to us today: Should a lawyer who stole over $45,000 of a client's money be considered for reinstatement, and, if so, under what guidelines?

[¶ 8] In grappling with the competing interests involved, we first reaffirm the purpose of the disciplinary process—to protect the public, not to punish the lawyer. *Matter of Simpson,* 467 N.W.2d 921, 921–22 (S.D.1991); *Matter of Stanton,* 446 N.W.2d 33, 42 (S.D.1989); *Matter of Strange,* 366 N.W.2d 495, 497 (S.D.1985). On the other hand, disbarment is no trivial occurrence. "Disbarment is warranted when it is clear that the protection of society requires such action or where the maintenance of respect for courts and judges or the respectability of the legal profession itself demands such action." *Matter of Crabb,* 416 N.W.2d 258, 259 (S.D.1987). Preserving trust in the legal profession is essential. The practice of law imposes a formidable responsibility upon lawyers to protect their clients' "property, freedom, and at times their very lives." *Petition of Chamley,* 349 N.W.2d 56, 58 (S.D.1984). Lawyers who misappropriate client funds for personal benefit violate an elemental duty and are most fittingly disbarred. ABA Standards for Imposing Lawyer Sanctions, Rule 4.1 (1986).

---

1. SDCL 16–19–83 provides, in relevant part, "A person who has been disbarred after hearing or by consent may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment." Further, SDCL 16–19–84 mandates that an attorney must apply to the Disciplinary Board to receive:

   a hearing at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.

   SDCL 16–19–87 provides, in part:

   If the petitioner is found fit to resume the practice of law, the judgment shall reinstate him, provided that the judgment may make

   reinstatement conditional upon the payment of all or part of the expenses of the reinstatement and all prior proceedings, and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct which led to his suspension or disbarment and upon the furnishing of proof of competency as may be required by the judgment in the discretion of the Supreme Court. The proof may include certification by the bar examiners of the successful completion of examinations for admission to practice after the suspension or disbarment.

2. Gerald Reade, a Yankton lawyer, consented to supervise Pier for this period, and the Disciplinary Board endorsed his offer. Reade also appeared at the hearing before this Court and reaffirmed his commitment.

[¶ 9] Mindful of these principles, "[a] court should be slow to disbar, but it should be even slower to reinstate; it should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer." *Matter of Morrison*, 45 S.D. 123, 126, 186 N.W. 556, 557 (1922); *see Petition of Reutter*, 500 N.W.2d at 902 (noting that *Morrison* remains the philosophy of the Court today). Therefore, a petitioner for reinstatement must prove, clearly and convincingly, good character and moral fitness to be trusted again. *Petition of Trygstad*, 435 N.W.2d 723, 724 (S.D.1989), *aff'd on reh'g*, 447 N.W.2d 360 (S.D.1989); *Petition of Reutter*, 500 N.W.2d at 901. Such a showing must "be persuasive enough to overcome the court's former adverse judgment on the appellant's character." *Matter of Egan*, 38 S.D. 458, 463–64, 161 N.W. 1003, 1006 (1917). Good character sufficient for initial admission to the bar is inadequate at this stage. *Id.*; *Petition of Reutter*, 500 N.W.2d at 901. Surely, the more culpable the misconduct, the greater the burden to prove worthiness for reinstatement. *See Petition of Murray*, 316 Md. 303, 558 A.2d 710, 711 (1989). Yet unless we hold disbarment is final and unalterable, a position never taken previously, we must be open to the possibility a disbarred lawyer can so thoroughly reform that reinstatement becomes fair and reasonable.

[¶ 10] In our prior reinstatement decisions, we have evaluated a petitioner's rehabilitation with several general considerations in mind. For example, in *Draeger* we discussed reliability of character, progress in overcoming problems, and moral fitness to practice. 463 N.W.2d at 347. We have also examined basic competence in all areas of the law, *Petition of Voorhees*, 403 N.W.2d 738, 739 (S.D.1987), the effect reinstatement would have on the integrity of the bar, *Petition of Hopewell*, 529 N.W.2d 578, 582 (S.D.1995), and the gravity of the conduct prompting disbarment, *Trygstad*, 435 N.W.2d at 725. In the general area of discipline for misappropriating client funds, we have also remarked on the payment of restitution. *See, e.g., Coacher*, 438 N.W.2d at 549. We have yet to formulate, however, comprehensive and exacting criteria to apply in determining whether to reinstate a disbarred lawyer who misappropriated client funds.

[¶ 11] Several sources are helpful in framing suitable guidelines. The ABA Standards for Imposing Lawyer Sanctions, for example, note that while the presumption should be against reinstatement, a disbarred lawyer who has proven the following by clear and convincing evidence can be readmitted: (1) successful completion of the bar examination; (2) compliance with all applicable discipline or disability orders or rules; and (3) rehabilitation and fitness to practice law. ABA Standards for Imposing Lawyer Sanctions, Rule 2.2 (1986). In cases of misappropriating client funds, the Standards further suggest injury to the lawyer's victims be examined at the time of readmission. ABA Standards for Imposing Lawyer Sanctions, Rule 4.1 (1986).

[¶ 12] Other jurisdictions have adopted diverse ethical inventories to assess an applicant for reinstatement.[3] After re-

---

3. *See, e.g., Matter of Robbins*, 172 Ariz. 255, 836 P.2d 965, 966 (1992)(considering an exhaustive list of elements in a readmission action); *Hippard v. State Bar of California*, 49 Cal.3d 1084, 264 Cal.Rptr. 684, 782 P.2d 1140, 1145 (1989)(noting restitution is a determinative factor); *In re Clark*, 607 A.2d 1230, 1236 (Del.1992)(holding that the applicant's legal, and not simply personal, rehabilitation was helpful); *Florida Bar re Jahn*, 559 So.2d 1089, 1090 (Fla.1990)(noting rehabilitation, time since the disbarment, and moral character were important); *Matter of Reed*, 258 Ga. 271, 368 S.E.2d 499, 500 (1988)(finding remorse, rehabilitation, and moral fitness to practice as key factors); *In re Polito*, 132 Ill.2d 294, 138 Ill.Dec. 298, 547 N.E.2d 465, 468 (1989)(cataloguing six issues to

consider); *Petition of Murray*, 316 Md. 303, 558 A.2d 710, 711 (1989)(listing four factors, including conduct subsequent to disbarment, as determinative); *Matter of Pool*, 401 Mass. 460, 517 N.E.2d 444, 447 (1988)(listing five items for consideration in the reinstatement process); *Matter of Reinstatement of Wegner*, 417 N.W.2d 97, 98–99 (Minn.1987)(finding consciousness of wrongdoing, prior illness, and seriousness of misconduct significant); *Matter of Stafford*, 106 N.M. 298, 742 P.2d 510, 511 (1987)(noting, among others, that restitution was an important factor); *Matter of Bradley*, 897 P.2d 243, 244 (Okla.1993)(listing eight factors, including the applicant's consciousness of wrongdoing, as determinative); *In re Rosellini*, 108 Wash.2d 350,

viewing these and other authorities, we deem the following elements most relevant:

1. present moral fitness;
2. acceptance of wrongdoing with sincerity and honesty;
3. extent of rehabilitation;
4. nature and seriousness of the original misconduct and the disrepute it brought on the legal profession;
5. conduct following the discipline, including whether there has been any unauthorized practice of law;
6. time elapsed since the original discipline;
7. character, maturity and experience at the time of discipline and now;
8. current competency and qualifications to practice law;
9. restitution; and
10. proof that resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.

*See generally* SDCL 16–19–84. For further supporting authority, *see* n 3 *supra.* A numerical arrangement of these factors in no way suggests some are less important than others. "Until we are fully satisfied of thorough reformation, we [cannot] . . . certify to the honesty of one whose conduct has been such as to render him unfit as a member of an honorable profession, without being derelict in the duty we owe, as members of this court, to the public and the profession." *Kaas,* 39 S.D. at 6, 162 N.W. at 371.

[¶ 13] To begin, we must thoroughly consider Pier's moral fitness, including his consciousness of wrongdoing and the extent of his rehabilitation. *Petition of Reutter,* 500 N.W.2d at 901. In both the Board hearing and at the hearing before us, Pier was open and honest and plainly confessed his misconduct. This was also his posture during the initial Board hearing in 1991, as he testified candidly about the theft, even though he was unaware at the time whether his admissions would be used in criminal proceedings against him. *Compare Petition of Hopewell,* 529 N.W.2d at 582 (petitioner for reinstatement refused to accept responsibility for prior misconduct).

[¶ 14] Members of the bar from Yankton and elsewhere, and other persons in the professional community, offered testimony and affidavits in support of Pier's readmission.[4] His contacts with some of these people were occasioned through his extensive public and church commitments both before and since his disbarment. Now he appears to have the backing of an entire community. His supporters have witnessed his devoted participation in civic and philanthropic affairs, all of which confirm good moral traits. *See Matter of Barton,* 432 A.2d at 1337. We are impressed that lawyers and lay people alike affirm his good character and reputation. Community support, while not dispositive, suggests Pier's readmission will not impugn the public interest. *In re Clark,* 607 A.2d 1230, 1234 (Del.1992); *Petition of Murray,* 558 A.2d at 714–15.

[¶ 15] Pier worked as a paralegal following his disbarment. Gerald Reade and Frank Brady, reputable, longtime members of the South Dakota Bar, employed him in their office to research, investigate, and prepare court documents. Consequently, Pier has kept current particularly in the matters in which Reade practices, including personal injury, products liability, and workers' compensation. Both Reade and Brady testified at the Board hearing that they found Pier to be trustworthy, competent, and diligent. Brady is a former bar president, legislator, and mayor. Accordingly, the Board gave these endorsements appreciable weight. Further, there was no evidence Pier overstepped his duties as a paralegal and crossed over into the unauthorized practice of law. A Sioux Falls lawyer attested to this fact recounting that, in his dealings with the firm, Pier had been in a situation where he might have been

739 P.2d 658, 660–61 (1987)(considering applicant's standing, reputation, and appreciation of wrongfulness as important factors).

4. Those supporting Pier include the immediate past president of the bar, a retired judge, a former legislator, and a former Yankton County Commissioner.

tempted to behave as if he were practicing law, but properly declined.

[¶ 16] Unquestionably, the original misconduct was destructive, bringing discredit upon the legal profession. Handling client funds requires trust and confidence—attributes essential to the attorney-client relationship. ABA Standards for Imposing Lawyer Sanctions, Rule 4.1 Commentary (citing *In re Wilson*, 81 N.J. 451, 409 A.2d 1153, 1154-55 (1979)); *see also Matter of Tidball*, 503 N.W.2d 850, 856 (S.D.1993). This trust was betrayed, and yet we think it can be restored. Pier's payment of full restitution does more than just settle accounts. "Restitution is fundamental to the goal of rehabilitation." *Hippard v. State Bar of California*, 49 Cal.3d 1084, 264 Cal.Rptr. 684, 782 P.2d 1140, 1146 (1989). Pier repaid what he took, with interest, within days after he admitted guilt. Repayment alone will not establish rehabilitation, but certainly restitution expresses the sincerest form of atonement and the surest mark of accountability.

[¶ 17] We conclude the Board's recommendation for reinstatement rests upon sound and substantial grounds and that Pier has met his burden of proving by clear and convincing evidence he has regained fitness to practice. The public interest, the administration of justice, and the reputation of the bar will not be undermined if Pier is readmitted. One remaining point, however, gives us pause. SDCL 16-19-83 provides a disbarred attorney may apply for reinstatement five years after disbarment becomes effective. *Accord* ABA Standards for Imposing Lawyer Sanctions, Rule 2.2 Commentary (1986)(noting "in no event should a lawyer even be considered for readmission until at least five years after the effective date of disbarment"). Pier's petition arrived little more than five years after his July 1991 disbarment. We would be more confident, ordinarily, with a longer period to clearly establish rehabilitation before a disbarred lawyer petitions for readmission. *See generally Matter of Pool*, 401 Mass. 460, 517 N.E.2d 444 (1988)(five-year disbarment necessary). However, Pier's sincere remorse for his wrongful conduct and his convincing moral amends establish renewed fitness to practice.

Moreover, since his readmission is probationary, we know his activities will be carefully scrutinized for two years. We believe, therefore, in the unique circumstances of this case, his petition for reinstatement was not premature.

[¶ 18] While his misconduct was harmful to both the public and the bar, we now look to "temper justice with mercy, believing that his professional life is redeemable." *Stanton*, 446 N.W.2d at 43 (Henderson, J., dissenting). Pier is conditionally reinstated, subject to the following requirements: (1) he must pass the bar exam, including the ethics portion; (2) he will be closely supervised for two years by Gerald Reade or another member of the bar approved by this Court; (3) he must maintain malpractice liability insurance, with proof supplied to the Board; and (4) he must pay all expenses of the reinstatement. SDCL 16-19-87 (permitting conditional reinstatement); *Petition of Voorhees*, 403 N.W.2d at 739 (affirming the Court's power to require a petitioner for readmission take the bar exam); *cf.* SDCL 16-16-17.1 (vesting power in the Court to admit lawyers to practice on a conditional basis).

[¶ 19] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

