2000 SD 89

**In the Matter of the DISCIPLINE OF Robert G. MINES, Attorney at Law.**

**No. 20128.**

Supreme Court of South Dakota.

Argued Jan. 11, 2000.

Decided July 12, 2000.

---

Laurence J. Zastrow, Pierre, South Dakota, Attorney for Disciplinary Board of the State Bar.

Robert G. Mines, Hot Springs, South Dakota, Pro Se Respondent.

AMUNDSON, Justice.

[¶ 1.] This is a disciplinary proceeding against Robert G. Mines (Mines), a member of the State Bar of South Dakota. We disbar.

## FACTS

[¶ 2.] Mines graduated from the University of Denver School of Law in 1971 and was admitted to practice law in this state on September 13, 1972. Mines practiced law in McIntosh, South Dakota until 1979 where he had purchased the law practice of Harvey Crow. Since 1979, Mines practiced as a solo practitioner in Hot Springs, South Dakota. Mines closed his law practice in May 1997 and now resides in San Francisco de los Viveros, Mexico.

[¶ 3.] Numerous complaints regarding Mines' representation of clients in the practice of law were reported to the Disciplinary Board (Board) of the State Bar of South Dakota in 1997. After extensive investigations and hearings on April 3, 1997 and June 16, 1997, Board filed formal accusations against Mines accusing him of violating numerous Rules of Professional Conduct [1] and statutes, and recommended the disbarment of Mines. On September 15, 1999, Circuit Judge Lee Anderson, acting as Referee (Referee), also recom-

---

1. South Dakota's Rules of Professional Con-     duct are located in SDCL 16–18 Appendix.

mended disbarment, concluding that Mines had committed numerous and repeated violations.

[¶ 4.] Mines employed the shotgun approach in objecting to the findings of fact entered by Referee after the hearing. These objections were yet another effort by Mines to put his own coloring on the picture painted by the testimony of the witnesses and the numerous exhibits. As we stated in *Bressler v. Stanek*, 10 S.D. 625, 626, 74 N.W. 1118 (1898), "the evidence, under any view of the case, is amply sufficient [to support the findings of fact of Referee], it would be a useless expenditure of time and space to collect [from the record] the voluminous testimony of the witnesses, for the purpose of an orderly presentment of the same for this opinion." As such, we will briefly discuss the accusations against Mines and the rules and statutes that Mines was found to have violated.

### Arthur Complaint

[¶ 5.] A disciplinary action was initiated against Mines because he deposited checks received from Ms. Carol Arthur (Arthur) into his law office account (which was overdrawn by $3,310.17) rather than depositing them into his client trust account. Referee found that Mines violated Rule 1.15(d)(1)[2] "by failing to deposit client trust funds received as advances [from Arthur] for fees, costs and expenses in a client trust account." Referee also found that Mines violated Rule 1.3[3] by failing to

act with reasonable diligence and promptness in the preparation and filing of a complaint in the Arthur matter.

### Mandel Complaint

[¶ 6.] Mines was accused by acting-U.S. Attorney Robert Mandel (Mandel) of backdating his reply brief in an action before the United States Eighth Circuit Court of Appeals. Mines had signed his Certificate of Service stating that the brief was mailed at Hot Springs on January 4, 1996. The brief, however, was actually mailed at the Smithwick, South Dakota Post Office just before midnight on January 5, 1996 and the proper postmark for the brief, without the alleged backdating, would have been January 6, 1996. Referee concluded that Mines violated Rule 1.1[4] based upon his lack of competence and Rule 1.3 by failing to act with reasonable diligence and promptness in matters entrusted to him. The conduct of Mines in this matter was also false and misleading.

### Psychological Testing

[¶ 7.] Mines was accused of having his "legal assistant" Myra Chattic (Chattic) conduct psychological tests on his clients for the purpose of obtaining a psychological report from Dr. James Snow, a licensed psychologist in Hot Springs. In addition to assisting Mines in his legal practice, Chattic who was also working with Dr. James Snow to complete her field practicum in guidance and counseling. These reports were ultimately used and relied upon in personal injury cases

2. Rule 1.15(d)(1) provides:

(1) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(a) Funds reasonably sufficient to pay bank charges may be deposited therein.
(b) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn

when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

3. Rule 1.3 states:

A lawyer shall act with reasonable diligence and promptness in representing a client.

4. Rule 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

against the federal government and insurance companies without any disclosure to the opposing party that Mines' employee had conducted the psychological tests upon which the reports were based. Further, Mines was also accused of charging several of his personal injury clients for amounts above what Dr. Snow charged, paying Chattic for administering the tests, and failing to inform the client of this procedure.[5] Referee found that the "course of conduct by Mines and his employee (Chattic) presents serious misrepresentations to both his clients, Dr. Snow, and opposing parties against whom claims were being made."

### Lemke Complaint

[¶ 8.] Mary Ellen Lemke (Lemke) accused Mines of a five year delay in filing a motion to add a party in Lemke's action. Mines was also accused of failing to return Lemke's repeated phone calls requesting information on the status of her lawsuit. Referee concluded that Mines violated Rule 1.4[6] by failing to communicate with his clients and keep them reasonably informed about the status of a matter, failing to promptly comply with reasonable requests for information, and failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

### Disciplinary Board Investigation

[¶ 9.] Board made a formal accusation against Mines asserting that he repeatedly failed to promptly respond to Board's requests for responses to the complaints, notices of hearings, and subpoenas in the complaints filed by Lora Michaels, Brad Calhoon, Mark Clinard, and Ruth Vaughn. Referee determined that Mines violated SDCL 16–19–54, –55 and –56[7] by failing to

---

5. For example, in Mines' representation of Buckly Denevan, he charged $600 for psychometric testing, but paid Dr. Snow only $150. The remaining $450 was paid to Chattic without any disclosure to the opposing party or Mines' client that Chattic would be compensated. Mines also "charged" Irene Tuttle $1,200 for psychological testing by "Dr. Snow," but paid Dr. Snow only $250. Further, Mines "charged" Gerald One Feather $1,341 for psychological literature and assessment tools for brain injury, but no such materials were ever purchased.

6. Rule 1.4 states:
   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
   (c) If a lawyer does not have professional liability insurance with limits of at least $100,000, or if during the course of representation, the insurance policy lapses or is terminated, a lawyer shall promptly disclose to a client by including as a component of the lawyer's letterhead, using the following specific language, either that:
   (1) "This lawyer is not covered by professional liability insurance"; or
   (2) "This firm is not covered by professional liability insurance."
   (d) The required disclosure in 1.4(c) shall be included in every written communication with a client.
   (e) This disclosure requirement does not apply to lawyers who are members of the following classes: SDCL 16–18–20.2(1), (3), (4) and full-time, in-house counsel or government lawyers, who do not represent clients outside their official capacity or in-house employment.

7. Under SDCL 16–19–54,
   It shall be the duty of every attorney to promptly and appropriately respond to any complaint or letter forwarded to him by any member of the disciplinary board. In the event he shall fail to do so, he may be subject to private reprimand by the disciplinary board, or, after hearing upon order to show cause, disciplined by the Supreme Court.
   SDCL 16–19–55 provides:
   In matters under investigation any member of the board or its counsel or the attorney general is authorized to issue a subpoena requiring any witness to attend at any place within the state where the witness is subpoenaed to appear and requiring such witness, to produce pertinent books, papers and documents, and to administer oaths and take testimony in regard to such matters. The willful failure on the part of any person to respond to the subpoena, or the

promptly respond to Board's requests, that such conduct was a separate basis for discipline and that it constituted an aggravating circumstance which increased the severity of his appropriate discipline. *See Discipline of Tidball,* 503 N.W.2d 850 (S.D.1993); *Discipline of Kirby,* 336 N.W.2d 378, 380 (S.D.1983); *Discipline of Kintz,* 315 N.W.2d 328, 331 (S.D.1982).

### Client Trust Account

[¶ 10.] Mines maintained a general client trust account at Community First State Bank in Hot Springs. This account was an interest-bearing account. Referee found that Mines' trust account records were incomplete and confusing, and he failed to provide an accurate accounting of the interest earned on client funds and documentation of whether the interest earned was in fact paid to the client. In reviewing the trust account allegations against Mines, Referee found that Mines: (1)

failed to maintain a trust account journal, rather, he considered a deposit book, checkbook, client ledger cards, cancelled checks and bank statements as a sufficient client trust journal; (2) did not withdraw his fees from the client trust account, but instead, left as much as $5,000 as a "buffer" for the "protection of his clients;" (3) did not maintain a separate ledger card that would reflect the balance of Mines' funds in the trust account; (4) failed to keep any trust account records which would verify payment of interest earned on the trust account to the clients entitled to that interest; (5) kept no documentation as to the purpose of funds transferred from client trust accounts to his personal account; and (6) has failed to make proper and prompt distributions of funds.

[¶ 11.] Referee also found that Mines violated several rules including: (1) "Rule 1.15(d)(3) [8] by depositing client funds in an

willful refusal of any person to testify, shall constitute a contempt against the Supreme Court and may be punished accordingly. SDCL 16–19–56 provides:

The records required by § 16–18–20.1 may be subpoenaed by the attorney general or any member of the disciplinary board or its counsel in connection with any disciplinary investigation.

**8.** Rule 1.15(d) provides:

(d) Preserving Identity of Funds and Property of Client.

(1) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(a) Funds reasonably sufficient to pay bank charges may be deposited therein.

(b) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(2) A lawyer shall:

(a) Promptly notify a client of the receipt of his funds, securities, or other properties.

(b) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(c) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to his client regarding them.

(d) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

(3) A lawyer may elect to create and maintain an interest-bearing account for clients' funds which are nominal in amount or to be held for a short period of time in compliance with the following provisions:

(a) No earnings from such an account shall be made available to a lawyer or firm.

(b) The account shall include all clients' funds which are nominal in amount or to be held for a short period of time.

(c) An interest-bearing trust account may be established with any bank authorized by federal or state law to do business in South Dakota and insured by the Federal Deposit Insurance Corporation. Funds

interest-bearing account which did not meet the requirements of an interest-bearing account set forth in rule 1.15(d)(3)(a)–(d)"; (2) "Rule 1.15(d)(3) by depositing client funds held for an extended period in a general client trust account"; (3) "Rule 1.15(d)(3) by depositing client funds which exceeded the definition of a nominal sum in a general client trust account"; (4) "Rule 1.15(a) [9] by failing to disburse trust account funds representing his earned fees when they were determined, thus com-

mingling his funds with client funds"; (5) "Rule 1.15 by preparing and delivering checks drawn on his trust account before the funds were deposited or available for withdrawal"; (6) "Rule 1.15(a) and (d)(2)(c) and SDCL 16–18–20.1 [10] by failing to keep complete records of the trust account funds and preserving those records for a period of five years after termination of the representation"; (7) "SDCL 16–18–20.2 [11] by failing to keep a separate trust

in each interest-bearing trust account shall be subject to withdrawal upon request and without delay.

(d) The rate of interest payable on any interest-bearing trust account shall not be less than the rate paid by the depository institution to regular, nonlawyer depositors unless reduced to offset bank administrative costs. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minima, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm on some or all of deposit funds so long as there is no impairment of the right to withdraw or transfer principal immediately.

9. Under Rule 1.15(a),

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

10. Under SDCL 16–18–20.1,

Every attorney shall maintain complete records of the handling, maintenance and disposition of all funds, securities and other properties of a client at any time in his possession, from the time of receipt to the time of final distribution, and shall preserve such records for a period of five years after final distribution of such funds, securities or other properties or any portion thereof, and failure to keep such records shall be grounds for appropriate disciplinary proceedings.

11. SDCL 16–18–20.2 provides:

The provisions of this rule apply to all members of the State Bar of South Dakota concerning trust funds received or disbursed by them in the course of their professional practice of law within the State of South Dakota. However, these provisions shall not apply to (1) full-time members of the judiciary, i.e., Supreme Court justices, circuit court judges and magistrate judges, (2) nonresident attorneys licensed to practice in South Dakota who comply with comparable trust accounting requirements in the state wherein they maintain their office, and (3) non-profit legal services organizations that file a copy of their annual independent audit with The State Bar, (4) nonresident attorneys licensed to practice in South Dakota who have not represented a South Dakota client during the reporting period, or (5) members who have been in an inactive status for the full reporting period.

MINIMUM TRUST ACCOUNTING RECORDS

The minimum trust accounting records which shall be maintained are:

(1) A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts. Such accounts shall be located in South Dakota unless the client otherwise directs in writing. The account or accounts shall be in the name of the lawyer or law firm and clearly labeled and designated as a "trust account."

(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:

(a) The date and source of all trust funds received; and

(b) The client or matter for which the funds were received.

(3) Original cancelled checks, or copies of both sides of the original checks produced through truncation or check imaging, or the equivalent, all of which must be numbered consecutively.

account receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance containing: (a) [t]he identification of the client or matter for which the funds were received, disbursed, or transferred; (b) [t]he date on which all trust funds were received, disbursed, or transferred; (c) [t]he check number for all disbursements; and (d) [t]he reason, such as 'settlement,' 'closing' or 'retainer,' for which all trust funds were received, disbursed, or 'transferred'"; (8) "SDCL 16–18–20.2 by failing to keep other documentary support for all disbursements and transfers from the trust account and Rule 1.15(d)(2)(c) by failing to render appropriate accounts to the client as it relates to Mines' withdrawals

(4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate trust accounts receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
(a) The identification of the client or matter for which the funds were received, disbursed, or transferred;
(b) The date on which all trust funds were received, disbursed, or transferred;
(c) The check number for all disbursements; and
(d) The reason, such as "settlement," "closing" or "retainer," for which all trust funds were received, disbursed, or transferred.
(6) A separate file, ledger or computer file with an individual card, page or computer document for each client or matter, showing all individual receipts, disbursements, or transfers and any unexpended balance, and containing:
(a) The identification of the client or matter for which trust funds were received, disbursed, or transferred;
(b) The date on which all trust funds were received, disbursed, or transferred;
(c) The check number of all disbursements; and
(d) The reason, such as "settlement," "closing" or "retainer," for which all trust funds were received, disbursed, or transferred.
(7) All bank or savings and loan association statements for all trust accounts.
MINIMUM TRUST ACCOUNTING PROCEDURES

from the client trust account for 'fees and expenses'"; (9) "SDCL 16–18–20.2 by failing to keep a separate ledger card with all transactions for funds in the trust account which belonged to him."

### Advances to Clients

[¶ 12.] Board also accused Mines of making improper loans to his clients. Mines advanced monies to clients David Johnson, Nancy Botel, and Irene Tuttle by office checks and claimed that these monies represented "travel advances." Mines failed to maintain any records to confirm that these payments were "travel advances" and not loans. Referee concluded that the advances to the clients were "clearly loans" and therefore, Mines violated Rule 1.8(e) [12] by providing financial assistance to

The minimum trust accounting procedures which shall be followed by all attorneys practicing in South Dakota who receive or disburse trust money or property are:
(1) The lawyer shall cause to be made monthly:
(a) Reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and
(b) A comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards, pages, or computer documents, together with specific descriptions of any difference between the two totals and reasons therefor.
(2) At least annually, a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least six years.
(4) The lawyer shall file with The State Bar of South Dakota a trust accounting certificate showing compliance with these rules annually, which certificate shall be filed annually between December 1 and January 31 on a form approved by the Disciplinary Board.

12.  Under Rule 1.8(e)
(e) A lawyer shall not provide financial assistance to a client in connection with

clients in connection with pending or contemplated litigation without proper documentation that the assistance met the exceptions provided by the Rule.

### Aggravating Factors

[¶ 13.] Referee concluded that numerous aggravating factors exist. In 1978, Mines received an admonition from Board regarding the probate of an estate. In 1981, he received an admonition from Board for his conduct in the handling of a personal injury claim. He received another admonition from Board in 1981 for filing an attorney's lien claiming a fee in another personal injury action. Mines received a private reprimand from Board in 1985 upon the complaint by U.S. District Judge Donald Porter in another personal injury case where Mines had his secretary sign the client's name to a release of claim. In 1990, Mines received his fifth admonition from Board for failing to timely pay for requested court reporter services. He received yet another admonition from Board in 1991 for failing to timely pay for a requested medical report. Finally, in 1994, this Court imposed a public censure on Mines for making misrepresentations to the circuit court. *See Discipline of Robert G. Mines*, 523 N.W.2d 424 (S.D.1994).

## STANDARD OF REVIEW

[¶ 14.] In disciplinary actions, we are not bound to accept the Referee's recommendation, but it is "nevertheless entitled to our careful consideration." *See Discipline of Strange*, 366 N.W.2d 495, 497 (S.D.1985) (citations omitted). In giving the referee's findings careful consideration, we are "mindful of the fact that the referee saw and heard the witnesses with all the advantage that is gained from such personal contract." *Discipline of Walker*, 254 N.W.2d 452, 454 (S.D.1977). We will not disturb the referee's findings when

they are supported by the evidence. *Id.* (citing *In re Schmidt*, 70 S.D. 161, 16 N.W.2d 41 (1944)). *See also Discipline of Weisensee*, 88 S.D. 544, 546, 224 N.W.2d 830, 831 (1975) (citation omitted) (noting that when the findings "are amply supported by the evidence ... such findings will not be disturbed by this [C]ourt"). Further, this Court makes the final determination for an attorney's appropriate discipline. *Discipline of Wehde*, 517 N.W.2d 132, 133 (S.D.1994).

## DECISION

[¶ 15.] It is well-settled that the "purpose of the disciplinary process [is] to protect the public, not to punish the lawyer." *Petition of Pier*, 1997 SD 23, ¶ 8, 561 N.W.2d at 299 (citing *Matter of Simpson*, 467 N.W.2d 921, 921–22 (S.D. 1991); *Discipline of Stanton*, 446 N.W.2d 33, 42 (S.D.1989); *Strange*, 366 N.W.2d at 497). The disciplinary options at this Court's disposal are provided under SDCL 16–19–35 as: "public censure, placement on probationary status, suspension for up to three years and disbarment." *Discipline of Hopewell*, 507 N.W.2d 911, 918 (S.D.1993).

[¶ 16.] In the present case, both Board and Referee have recommended the disbarment of Mines. Imposing disbarment on an attorney is "no trivial occurrence." *See Pier*, 1997 SD 23, ¶ 8, 561 N.W.2d at 299. " 'Disbarment is warranted when it is clear that the protection of society requires such action or where the maintenance of respect for courts and judges or the respectability of the legal profession itself demands such action.' " *Id.* (quoting *Discipline of Crabb*, 416 N.W.2d 258, 259 (S.D.1987)). We must, however, decide each case " 'upon its own particular set of facts,' properly balancing

pending or contemplated litigation, except that:
(1) a lawyer may advance court costs and expenses of litigation, the repayment of which shall be the ultimate obligation of the client; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

the aggravating and mitigating circumstances." *Wehde*, 517 N.W.2d at 134 (quoting *Discipline of Jeffries*, 500 N.W.2d 220, 225–26 (S.D.1993) (citations omitted)).

■ [¶ 17.] In determining the appropriate sanction to impose, we review the totality of the attorney/client relationship and evaluate any aggravating or mitigating factors. *See Discipline of Bihlmeyer*, 515 N.W.2d 236, 239 (S.D.1994). The aggravating factors include:

(a) prior disciplinary offenses,

(b) dishonest or selfish motive,

(c) a pattern of misconduct,

(d) multiple offenses,

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency,

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process,

(g) refusal to acknowledge wrongful nature of conduct,

(h) vulnerability of victim,

(i) substantial experience in the practice of law, and

(j) indifference to making restitution.

*Discipline of Claggett*, 1996 SD 21, ¶ 16, 544 N.W.2d 878, 881 (citing ABA Standards for Imposing Lawyer Sanctions Rule 9.22). The mitigating factors include:

(a) absence of a prior disciplinary record,

(b) absence of a dishonest or selfish motive,

(c) personal or emotional problems,

(d) timely good faith effort to make restitution or to rectify consequences of misconduct,

(e) full and free disclosure to Disciplinary Board or cooperative attitude toward proceedings,

(f) inexperience in the practice of law,

(g) character or reputation,

(h) physical or mental disability or impairment,

(i) delay in disciplinary proceedings,

(j) interim rehabilitation,

(k) imposition of other penalties or sanctions,

(*l* ) remorse, and

(m) remoteness of prior offenses.

*Id.* (citing ABA Standards Rule 9.32).

■ [¶ 18.] In determining the appropriate discipline, we consider: " 'whether the conduct involved dishonesty, deceit, fraud, or misrepresentation; whether the conduct is prejudicial to the administration of justice; whether the conduct adversely reflects upon the attorney's integrity; competency or fitness to practice law; the seriousness of the misconduct by the attorney; and the likelihood of repeated instances of similar misconduct.' " *Claggett*, 1996 SD 21, ¶ 14, 544 N.W.2d at 880–81 (quoting *Jeffries*, 500 N.W.2d at 223 (citations omitted)). *See also Matter of Tidball*, 503 N.W.2d 850, 855–56 (S.D.1993) (noting that "[a]ppropriate discipline is determined upon a consideration of the seriousness of the misconduct by the attorney and the likelihood of repeated instances of similar misconduct").

[¶ 19.] In *Stanton*, this Court was faced with what sanction to impose on an attorney. 446 N.W.2d at 34. Stanton was accused of several instances of misconduct ranging from ignorance of the law and unconscionable delays in cases to lying to the court and betrayal of client confidences. *Id.* at 36. We found that Stanton had failed to follow the statutory mandates for filing an inventory and appraisal in a probate matter, unreasonable inaction on another probate case for over three years, failure to timely file an application for fees and comply with discovery in bankruptcy court, failure to complete a dissolution of a real estate partnership resulting in financial harm to the client, permitted a client to sell assets in a Chapter 11 bankruptcy proceeding without court approval, payment for sheriff's fees to the county treasurer with an insufficient funds check, and allowing an estate to remain open for over ten years. *Id.* at 36–41. In finding the

referee's findings of fact and conclusions of law were well supported in the record and Stanton's utter incomprehension that he did anything wrong, this Court imposed the sanction of disbarment. *Id.* at 43.

[¶ 20.] In *Crabb*, this Court was faced with the recommendation to disbar attorney Crabb. 416 N.W.2d at 258. Crabb was found to have committed several acts of gross neglect including: "handling client's trust funds, failure to meet statute of limitations deadlines, untimely delay in getting out work, and failure to respond to grievance committee inquiries." *Id.* We found that Crabb had failed to proceed expeditiously in numerous cases, failed to respond promptly and appropriately to Board inquiries, and failed to file and pay sales tax returns. *Id.* at 259–60. This Court ultimately found that disbarment was the appropriate sanction against Crabb, who had "consistently fail[ed] to give those clients timely service necessary to bring the cases to fruition." *Id.* at 260.

[¶ 21.] We reiterate that this is not the first time Mines has come before this Court in a disciplinary matter. *See Mines,* 523 N.W.2d 424 (imposing a public sanction upon Mines). Mines was admitted to practice law in South Dakota in 1972. Since 1978, Mines has received several disciplines from the Board and a public censure by this Court in 1994. Since our public censure of Mines, all of the previously mentioned incidents for which Mines was accused of occurred.

[¶ 22.] In the present case, Mines alleges in his responses that he did not violate any rules other than leaving $2,000 and $5,000 in the client trust account, which he claims was cushion to protect the clients from an overdraft, and in maintaining his client trust account as an interest bearing account and not remitting the interest to the South Dakota Bar Foundation. Mines' rationale for violation of the client trust account rules is quite unbelievable. Why would Mines have needed to worry about overdrafts if he was handling his accounts in a professional manner? Other than these two admissions, Mines does not acknowledge that he, personally, made any other mistakes in the maintenance of his client trust accounts, handling of cases, billing expenses, or disbursing settlement amounts to clients. We do not agree. A review of the record, as we have previously outlined, reveals substantial evidence exists in the record to support the Board's and Referee's findings and recommendation. Mines' handling of his trust accounts and client's earned interests barely falls short of theft and that is only because theft cannot be proved based upon Mines' deplorable office practices. Mines' maintenance of trust records was so incomplete and confusing that one would have to be a Houdini to interpret his records. Further, Mines' preparation of the psychological reports through his legal assistant and the over-billing of his clients for those tests has a flavor of deceptive practices not only to the opposing parties, but also to his own clients.

[¶ 23.] In reviewing the record, Mines has failed to provide any evidence to substantiate his contentions. Instead, he asks this Court to "trust him." It is difficult to trust Mines when he provided us nothing to justify his conduct. Therefore, the protection of society and the maintenance of respect for the courts, judges, and the legal profession, warrant Mines' disbarment.

[¶ 24.] Therefore, we order: (1) Effective immediately, a judgment shall be entered disbarring Mines, and striking his name from the Clerk's roll of attorneys; (2) Mines shall immediately comply with the provisions of SDCL 16–19–78 through –81 inclusive and return all files and documents to his clients; and (3) Mines shall pay all costs of this action under SDCL 16–19–70.2.

[¶ 25.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.